Patrick Murray KEATING, Appellant,

v.

STATE OF MISSOURI, Appellee.

No. 80–1553.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1980.

Decided March 10, 1981.

Austin F. Shute, Kansas City, Mo., for appellant.

Patrick M. Keating, pro se.

John Ashcroft, Atty. Gen., Robert Presson, Asst. Atty. Gen. (argued), Jefferson City, Mo., for appellee.

Before HEANEY, ROSS and STEPHEN-SON, Circuit Judges.

HEANEY, Circuit Judge.

The appellant appeals from an order of the United States District Court for the Western District of Missouri denying his application for habeas corpus relief under 28 U.S.C. § 2254 (1976). We affirm the order of the district court.

## I.

■ The appellant filed a petition for writ of habeas corpus, challenging the constitutional validity of his state court conviction for possession of a controlled substance and the resulting five year sentence.[1] The case was referred to the Honorable Richard H. Ralston, United States Magistrate, who conducted a full evidentiary hearing. Magistrate Ralston recommended that the petition be denied; that recommendation was adopted by the district court and forms the basis of this appeal.

The appellant contends he was convicted in violation of his constitutional due process rights because the state failed to disclose that certain agreements had been made between the district attorney's office and the principal prosecution witness, Sharon Pollard. The appellant asserts that he filed timely discovery motions that specifically requested that information, but the state disclosed no agreements or deals. Keating claims that the prosecution's star witness was given a deal for her testimony. He argues that for Pollard's testimony, the state agreed to drop several criminal cases then pending against her in Missouri and Kansas.

Keating claims that at least seven criminal cases involving Pollard were dismissed shortly before, during and after the appellant's state court trial as a result of a deal. He argues that the state's failure to disclose

---

1. After he filed this action, the Missouri Board of Probation and Parole conditionally released Keating. Keating's release on parole does not bar the present challenge to his conviction. *See Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

that prejudiced his ability to effectively impeach the witness's credibility thus denying him due process.

The record of the state proceeding reveals that Sharon Pollard was serving a three year sentence for forgery at the Municipal Correctional Institution in Kansas City, Missouri. She was contacted in the Institution by an investigator of the Office of the Jackson County Prosecutor, Chuck Williams. Williams discussed drug trafficking within the Jackson County Jail with Pollard; they also discussed Keating's possible involvement in that trafficking. After Pollard's release from the Municipal Correctional Institution, she visited Williams at his office in the Jackson County Courthouse. At this meeting, they made arrangements to pass drugs to Keating through Pollard, and later apprehend the appellant as he passed them on to inmates in the Jackson County Jail.

After she had obtained prescriptions for the drugs, with the aid of another investigator in the prosecutor's office, Pollard called Keating to say she'd scored. She told him she would call him later that evening, after the prescriptions were filled, and set a time and place for them to meet the next day. The second call to Keating was placed later that evening, and the two agreed to meet the next morning at 8:30 a. m. on the ninth floor of the Jackson County Courthouse.

Williams had positioned an investigator and another man on the ninth floor to witness the drop. The two men, in fact, did witness the exchange of a white sack with a pharmaceutical label on the side. Thereafter, Keating went to the twelfth floor of the courthouse, the jail area. Williams had positioned men here as well who planned to arrest Keating upon the signal that an exchange had been made. The signal was improperly given and Keating was arrested and searched. The search produced the drugs that Pollard had just given him.[2]

The state's case consisted of Williams' testimony concerning the arrangements he and Pollard had made. The investigator who witnessed the drop testified. Moreover, the sheriff who arrested him and the correctional official who searched him both testified. The state's principal witness was Sharon Pollard. Although the state had a solid circumstantial evidence case, Pollard's testimony was the state's only direct evidence against Keating.

Keating's defense was that he had formerly been Pollard's attorney and that she called him to set up a business meeting at the courthouse. He explained that he thought there was money in the white sack; his defense was that Pollard had "framed" him. The jury rejected his defense and returned a verdict of guilty. Keating's conviction was affirmed on appeal to the Missouri Supreme Court. *State v. Keating*, 551 S.W.2d 589 (Mo.1977), *cert. denied*, 434 U.S. 1071, 98 S.Ct. 1255, 55 L.Ed.2d 775 (1978).

## II.

There were four criminal cases pending against Pollard in the Missouri state courts at the time the appellant was arrested in the spring of 1973.[3] All four cases were dismissed by the prosecutor's office sometime after the appellant's arrest. At the time of Keating's trial, two additional criminal charges were pending against Pollard in the State of Missouri.[4] These two cases were dismissed by the prosecutor soon after

---

**2.** The drug Keating was charged with possessing was Phenmetrazine Hydrochloride, a Schedule III controlled substance under Missouri law. Mo.Ann.Stat. § 195.017 (Vernon).

**3.** The four charges were: (1) *Missouri v. Pollard*, No. C–162446 (filed May 3, 1973) (forgery); (2) *Missouri v. Pollard*, No. C–162528 (filed May 9, 1973) (forgery); (3) *Missouri v.*

*Pollard*, No. C–162787 (filed May 31, 1973) (possession of narcotics); and (4) *Missouri v. Pollard*, No. C–162529 (complaint filed, no information filed or indictment returned) (forgery).

**4.** *Missouri v. Pollard*, Nos. C–44949 and C–45213 (receiving stolen property).

the close of the Keating trial. There were also two criminal cases pending against Pollard in the Kansas state courts.[5] These two cases were dismissed by the Wyandotte County Attorney's Office on May 30, 1974. The Kansas cases were dropped at 12:42 p.m., minutes after Pollard finished her testimony in the Keating trial, and during the court's afternoon recess.

The Missouri prosecutor's office admits that it called the Kansas authorities and inquired whether the latter intended to drop the charges then and there pending against Pollard. Further, no one testifying before the Magistrate could adequately approximate the time of that call. We agree with the petitioner that the state's admission that it contacted the Kansas authorities, in conjunction with the fact that the Kansas charges were dismissed within minutes after the close of Pollard's testimony, raises a strong inference that there was, in fact, a "deal" between the prosecutor and Pollard.

Habeas corpus relief may be properly ordered, however, only when the petitioner successfully shoulders the burden of establishing that his conviction was obtained in violation of his constitutional rights. *Walker v. Johnston,* 312 U.S. 275, 286, 61 S.Ct. 574, 579, 85 L.Ed. 830 (1941); *Johnson v. Mabry,* 602 F.2d 167, 171 (8th Cir. 1979); *Hawkins v. Bennett,* 423 F.2d 948, 951 (8th Cir. 1970); *Copenhaver v. Bennett,* 355 F.2d 417, 422 (8th Cir. 1966). *See also Harned v. Henderson,* 588 F.2d 12, 22 (2d Cir. 1978). Here, the petitioner failed to meet this burden. The court below concluded, after a full evidentiary hearing, that there was not sufficient evidence to sustain Keating's claim that the prosecutor and Pollard had entered into an arrangement whereby the former would dismiss charges pending against the latter after her testimony in the Keating trial. After a thorough review of the entire file and all proceedings, we determine that while there is evidence in the

record that inferentially supports the petitioner's contention, we cannot conclude that the district court's factual finding to the contrary is clearly erroneous. *See Walker v. Lockhart,* 620 F.2d 683, 686 (8th Cir. 1980); *Smith v. Brewer,* 577 F.2d 466, 467–468 (8th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978); *Leasure v. Lockhart,* 509 F.2d 23, 25 & n.3 (8th Cir. 1975).

### III.

It is clear that if the *Pollard* cases were dismissed by the prosecutors' offices as the *quid pro quo* for Pollard's testimony at Keating's trial, such a prearranged deal should have been disclosed to the appellant upon his specific discovery request. Such an agreement is clearly "evidence favorable to the accused" under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In *Brady,* the Supreme Court ruled that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faitn or bad faith of the prosecution." *Brady, supra,* 373 U.S. at 87, 83 S.Ct. at 1196. The Supreme Court further clarified the *Brady* rule in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In *Agurs,* the Court stated: "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2397.

This Court has recently had occasion to discuss *Brady's* application in an analogous setting. In *Scurr v. Niccum,* 620 F.2d 186 (8th Cir. 1980), this Court affirmed a district court order granting habeas corpus relief. There the state authorities suppressed statements that tended to impeach the credibility of trial testimony offered by

---

5. *Kansas v. Pollard,* Nos. 20544 "A" CR and 20546 CR (forgery).

its principal witness. In *Niccum*, the state's principal witness and the defendant were accomplices in a scheme that ultimately resulted in the brutal murder of a young woman in the back room of her place of employment, a dry cleaning store. At trial, each accused the other of the crime. The prosecutor's office suppressed statements of its witness that tended to impeach his alibi testimony. The state, moreover, suppressed police reports which revealed that the police had originally suspected that someone other than the defendant or the prosecution witness had committed the crime.

In *Niccum*, we concluded:

[W]here the police reports are so strongly suggestive of the possibility of another perpetrator, where the state's case against the defendant rests almost entirely upon the credibility of a single alleged accomplice, and where no explanation appears for the shift in focus from the third party to the defendant, we have no difficulty * * * concluding that pretrial disclosure of that information might have affected the outcome of the trial.

*Niccum, supra*, 620 F.2d at 191 (footnote omitted).

■ But even assuming, *arguendo*, that the state suppressed information which clearly established that an agreement was entered into between the prosecutor and Pollard, the peculiar circumstances of this case still do not warrant granting Keating his requested relief here. We cannot say that the state's failure to disclose the existence of such an arrangement "might have affected the outcome of the trial." *Agurs, supra*, 427 U.S. at 104, 96 S.Ct. at 2397; *Niccum, supra*, 620 F.2d at 189. For even without this information, the defense counsel's cross-examination of Pollard clearly pictured her as "a witness of little credibility, with a substantial history of criminal activity and a well defined propensity for self-preservation through collaboration with law enforcement officials." *Keating v.*

*Missouri*, Civil No. 77 0845 CV W 2 (Feb. 21, 1980) (magistrate's recommendation).

Defense counsel's cross elicited, *inter alia*: (1) Pollard had been taking drugs for twenty years. (2) She had been hospitalized in the medical wing of a federal correctional institution for drug abuse. (3) At the time of the trial she was a participant in the methadone program at the Kansas City Medical Center. (4) She was participating in the methadone program as a result of her long history of heroin and related drug addiction. (5) While she was cooperating with the prosecutor's office, several criminal charges were then pending against her. (6) She had been married four times. (7) She had not held a steady job in ten years. (8) She had been incarcerated in the Municipal Correctional Institution. (9) She had been serving a three year sentence in the Missouri Penitentiary for Women at the time the prosecutor's office approached her about the Keating matter. (11) She escaped from the hospital in Columbia, Missouri, while she was in the custody of the Missouri Department of Corrections. (12) She attempted to escape from the Municipal Correctional Institution. (13) She had been an informant for the Jackson County Prosecutor's Office and the United States Attorney's Office for ten years. (14) She admitted that she was not a law-abiding citizen. (15) During the time she operated as an informant for this prosecutor's office, criminal charges pending against her had been dismissed by the state; these offenses included carrying a concealed weapon, prostitution, shop lifting and forgery.

In *Niccum, supra*, the state's case rested almost entirely upon the credibility of the informant-witness. Here, that is not the case. As we stated earlier, the state's case in the instant matter was solid even without Pollard's testimony. The fact that the state's case was strong without the informant, in conjunction with the defense counsel's expert cross-examination of Pollard, leads us to the conclusion that the pretrial disclosure of an agreement between the

prosecutor and Pollard would *not* have affected the outcome of the Keating trial.[6]

The order of the district court denying the appellant's petition for writ of habeas corpus is affirmed.[7]

---

6. If the reliability of Pollard's testimony had been the determinative factor in the state's case, then failure of the prosecutor to disclose the agreement would necessitate the granting of Keating's habeas corpus petition here. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

7. We agree with the court below that the petitioner's double jeopardy claim is without merit, that his jurisdictional claims are not cognizable under 28 U.S.C. § 2254 (1976), and that his claim that there was not sufficient evidence to convict is unsupported by the record.