Kenneth Angelo WEDRA,
Petitioner-Appellant,

v.

Dale THOMAS, Robert Abrams, Attorney General, N.Y. State,
Respondents-Appellees.

Cal. No. 81, Docket 80–2380.

United States Court of Appeals,
Second Circuit.

Argued Sept. 10, 1981.

Decided Feb. 3, 1982.

---

Richard E. Weill, Asst. Dist. Atty., Westchester County, White Plains, N.Y. (Carl A. Vergari, Dist. Atty., for Westchester County, and Gerald D. Reilly, Asst. Dist. Atty., White Plains, N.Y., of counsel), for respondents-appellees.

Donald E. Nawi, Larchmont, N.Y., for petitioner-appellant.

Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

On December 9, 1969, Kenneth Wedra was convicted of second degree murder in Westchester County Court. After completing his appeals, which included a petition to the Supreme Court for certiorari, Wedra filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. In his petition, Wedra alleged that the prosecution knowingly permitted an informer to commit perjury concerning a cooperation agreement with the State and suppressed information about the assistance it rendered the informer in connection with certain criminal charges pending against him. Judge Stewart denied the petition but granted a certificate of probable cause. We affirm.

I

On November 25, 1968, Dorothy DeTore was murdered in her home in Dobbs Ferry, New York. Several days later, her husband John confessed to having contracted for the slaying. DeTore told the police that he had paid Nicholas Gasparino $10,000 to make the arrangements. In exchange for a grant of immunity, Gasparino agreed to testify before the Westchester County Grand Jury. In this testimony, Gasparino identified appellant Wedra as the actual killer. Wedra and DeTore were then indicted for second degree murder.

On November 16, 1969, the day before the Wedra/DeTore trial was to begin, Detective William Cunningham of the Dobbs Ferry Police Department received a phone call from Bruno LaSpina, an inmate at the

Westchester County jail. LaSpina told Cunningham that he had some information which might prove useful at Wedra's trial and requested a meeting. Later that day, Cunningham and Eugene Curico, a senior investigator with the New York State Police, met with LaSpina. LaSpina told them that he and Wedra, a long-time acquaintance, recently had shared a cell at the Westchester County jail and, during that time, Wedra had admitted his participation in Dorothy DeTore's murder. LaSpina then asked whether the prosecution would help him with some pending charges if he testified for the People. Curico and Cunningham told LaSpina that they could not make any promises regarding assistance, because only the District Attorney's office had that authority, but they would see what could be done.

At the request of the detectives, Assistant District Attorney James R. Cowhey, the chief prosecutor in the Wedra/DeTore trial, met with LaSpina that evening. After LaSpina recounted the substance of Wedra's confession, Cowhey inquired about LaSpina's criminal record. LaSpina stated that he had been convicted of several different offenses; that he had recently pled guilty to a narcotics charge in New Rochelle, New York, and had been sentenced to serve three years at the drug rehabilitation prison in Comstock, New York. LaSpina also told Cowhey that two narcotics charges were pending against him in Nassau County, New York. However, LaSpina did not request assistance with these charges as he had done with the detectives. Instead he told Cowhey that he had mailed a *pro se* motion for resentencing on the New Rochelle charges and asked Cowhey to find out whether the motion papers had been received. Cowhey agreed to do so, although he felt that LaSpina's testimony would not be needed in view of Gasparino's willingness to testify.

The next day, LaSpina's motion papers arrived at the clerk's office and were forwarded to Assistant District Attorney Anthony B. Morosco, Deputy Chief of the Appeals and Motions Bureau. Upon reviewing the motion, Morosco concluded that it had merit and decided to ask Chief Assistant District Attorney Thomas Facelle for permission to agree to the resentencing. When Morosco entered Facelle's office, Facelle was in the midst of a meeting on the Wedra trial. Gasparino's attorney had just informed the District Attorney that his client would not testify against Wedra, and the prosecution team was trying to decide how best to proceed without Gasparino's testimony. Facelle told Morosco that they were considering the proffered testimony of a convict named Bruno LaSpina. Surprised to hear LaSpina's name mentioned, Morosco stated that he had come to discuss a resentencing motion then being made by LaSpina. Because LaSpina had been sent to Comstock that morning, Facelle decided to use the sentencing motion as the vehicle for securing his return. Upon LaSpina's return, Cowhey could question him again and decide then whether to call him as a witness.

On November 18, Morosco secured an order for LaSpina's return. Shortly thereafter, a representative of the District Attorney's office contacted Lawrence Martin, the attorney who had represented LaSpina in connection with the New Rochelle charges, and asked Martin if he would counsel LaSpina about testifying in the Wedra trial. Martin was told, however, that the District Attorney would make no deals with LaSpina. Although Martin no longer represented LaSpina, he agreed to speak with his former client.

On November 22, Cowhey met again with LaSpina. LaSpina did not ask for any help on the Nassau County charges or the New Rochelle sentencing, and Cowhey did not offer any. The two men simply discussed Wedra's confession and the possibility of LaSpina testifying. During this conversation, Cowhey learned that LaSpina also had petty larceny charges pending against him in Bronx County. At the conclusion of their meeting, Cowhey told LaSpina that he would be called as a witness on November 24.

Prior to testifying on November 24, La-Spina spoke with Martin. Martin advised LaSpina not to testify until he had a firm offer of assistance from the State, but La-Spina decided to testify without it. However, to the surprise of both Martin and the prosecution, when LaSpina took the stand, he denied that Wedra had confessed the murder of Mrs. DeTore. LaSpina stated that he had agreed initially to testify against Wedra in exchange for leniency but that he could not bring himself to commit perjury. Before LaSpina completed his surprising testimony, the trial judge declared a recess.

During the recess, LaSpina was taken to a holding room where he talked with Martin. LaSpina told Martin that, while he was testifying, he saw several known criminals in the spectator section. Because both he and his family had been threatened with death if he testified against Wedra, LaSpina feared he would be slain in the courtroom unless he changed his testimony. Martin relayed this information to the trial judge, who ordered the courtroom cleared and would-be spectators searched.

When LaSpina returned to the stand, he recanted his previous testimony and explained the circumstances surrounding it. He then testified about Wedra's damaging admissions. On cross-examination, Wedra's counsel sought to establish that the prosecution had induced LaSpina to change his testimony. LaSpina repeatedly denied having spoken with anyone but his attorney. Defense counsel also challenged LaSpina's testimony that he had not been offered any promises of leniency. Although LaSpina admitted that he was looking for consideration, he denied the existence of any deal.

While LaSpina was testifying, Assistant District Attorney McKenna called the Nassau County District Attorney's Office and attempted unsuccessfully to find out the nature of the charges against LaSpina. Several days later, McKenna again called Nassau County and reached Chief Assistant District Attorney Richard Dellin. After being informed of the charges against LaSpina, McKenna told Dellin that, because La-Spina had testified for the State, his life would be in danger if he went to jail. McKenna asked whether Dellin could arrange to have the Nassau County charges against LaSpina dropped. Dellin agreed to look into the matter but suggested that nothing be done until after the trial. McKenna agreed. The next day, McKenna spoke with the Chief Assistant District Attorney for Bronx County, and they had substantially the same conversation.

On December 8, the last day of the Wedra trial, LaSpina appeared in New Rochelle City Court for resentencing. The Assistant Corporation Counsel for the City of New Rochelle informed the presiding judge of LaSpina's trial role and stated that the District Attorney felt LaSpina would be in grave danger if kept in the Westchester County jail or sent to a State prison. For this reason, the District Attorney's office recommended that LaSpina be resentenced to time served. The court followed this recommendation.

Wedra was convicted on December 9. The next day, McKenna called the Bronx and Nassau District Attorneys' offices, told them of the conviction, and repeated his previous request that LaSpina not spend any time in jail. Thereafter, LaSpina was allowed to plead guilty to a lesser charge in Nassau County and was unconditionally discharged. The Bronx County charges were dismissed.

Wedra was sentenced to a prison term of twenty-five years to life, and his conviction was affirmed on appeal. *People v. Wedra*, 39 App.Div.2d 841, 333 N.Y.S.2d 374 (1972), *aff'd sub nom. People v. DeTore*, 34 N.Y.2d 199, 356 N.Y.S.2d 598, 313 N.E.2d 61, *cert. denied sub nom. Wedra v. New York*, 419 U.S. 1025, 95 S.Ct. 503, 42 L.Ed.2d 300 (1974). After the Supreme Court denied certiorari, Wedra moved to vacate his conviction pursuant to N.Y.Civ.Prac. Law § 440.10 (*coram nobis*). He alleged that the prosecution had promised LaSpina assistance in return for his testimony, had not disclosed the deal, and had allowed LaSpina to testify falsely that there was no deal. Pursuant to an order of the Appellate Divi-

sion, 56 App.Div.2d 903, 392 N.Y.S.2d 494 (1977), a hearing was held before New York Supreme Court Justice Isaac Rubin. In a lengthy and comprehensive opinion, Judge Rubin found that there was no deal between LaSpina and the State and that the prosecution acted "solely to protect the life and safety of LaSpina." He held that there was no prosecutorial misconduct and denied Wedra's motion to vacate. The Appellate Division affirmed and denied leave to appeal to the Court of Appeals. *People v. Wedra*, 72 App.Div.2d 674, 421 N.Y.S.2d 507 (1979). Judge Stewart, who found no reason to disagree with Judge Rubin, denied Wedra's habeas corpus petition. This appeal followed.

## II

█ In the resolution of appellant's claim of due process violation, the crucial determination is a factual one, *i.e.* the existence *vel non* of a cooperation agreement between LaSpina and the State. If there was such a deal, LaSpina perjured himself when he denied it, and its non-disclosure deprived the jury of a material fact bearing on LaSpina's credibility.

Appellant says that it "certainly seems" that a deal was made. However, such an assumption cannot stand in the face of contrary factual findings by both State Supreme Court Justice Rubin and District Judge Stewart. *Keating v. Missouri*, 643 F.2d 1315, 1317–18 (8th Cir. 1981). Judge Rubin found that no bargain was struck for LaSpina's testimony and no promises or understanding were had prior to his testimony. That finding is presumed to be correct, 28 U.S.C. § 2254(d), and appellant has failed to sustain his burden of establishing by convincing evidence that it was wrong. *Tanner v. Vincent*, 541 F.2d 932, 937 (2d Cir. 1976), *cert. denied*, 429 U.S. 1065, 97 S.Ct. 794, 50 L.Ed.2d 782 (1977); *United States ex rel. Regina v. LaVallee*, 504 F.2d 580, 582 (2d Cir. 1974), *cert. denied*, 420 U.S. 947, 95 S.Ct. 1330, 43 L.Ed.2d 425 (1975). Judge Stewart found that "there is ample

evidence on the record supporting the determination that no promises were made to LaSpina before he testified". We agree.

Once that finding of fact is accepted, appellant's principal argument for reversal can be disposed of quickly. LaSpina did not commit perjury when he .denied the existence of a deal, and the prosecution did not falter in its obligation to disclose the truth. *See Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). We find no merit in appellant's contention that his right to due process was violated because it was not disclosed that, after LaSpina had completed his testimony, the State, fearful for LaSpina's safety, requested that he not be jailed on other charges pending against him. Disclosure of these facts would have had no place in the trial unless the disclosure bore upon the credibility of LaSpina. The jury was fully aware, from both the testimony and the summations, that LaSpina hoped to receive favorable consideration from the State in return for his testimony. Since, at the time LaSpina testified, he had no way of knowing that the State would accede to his attorney's subsequent request that LaSpina be protected from jail-house retaliation for his testimony, the State's post-testimony efforts toward this end could not have affected his credibility. *United States v. DiCarlo*, 575 F.2d 952, 959–60 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978); *see United States v. Vargas Martinez*, 569 F.2d 1102, 1104 (9th Cir. 1978).

█ At the hearing before Judge Rubin, there was testimony that, as Detectives Cunningham and Curico were escorting LaSpina to the holding room during the break in his testimony, one of them told LaSpina that he could not expect lenient treatment if he testified as he had. In his reply brief on this appeal, appellant argues for the first time that the prosecution knowingly permitted LaSpina to testify falsely that he had not talked with the detectives.[1]

---

1. Although the prosecuting attorney had no knowledge of any conversation between LaSpi-

na and the detectives, the knowledge of a police officer may be attributable to the prosecu-

It is by now hornbook law that federal habeas corpus relief will not be granted a State prisoner on the basis of a claim that was not first presented in the State courts, *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Fielding v. LeFevre*, 548 F.2d 1102, 1106–07 (2d Cir. 1977), and that this Court will not consider errors that were not asserted in the District Court, *United States ex rel. Robinson v. Vincent*, 506 F.2d 923, 924 (2d Cir. 1974), *cert. denied*, 421 U.S. 969, 95 S.Ct. 1962, 44 L.Ed.2d 458 (1975); *United States ex rel. Springle v. Follette*, 435 F.2d 1380, 1384 (2d Cir. 1970), *cert. denied*, 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 331 (1971). Assuming for the argument that we may consider the wrongdoing alleged in the reply brief, we find no reasonable likelihood that it could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Neither Cunningham nor Curico had authority to make any promises or assurances of leniency, and LaSpina knew it. A statement by one of them that, in view of LaSpina's surprising reversal of roles, he could hardly expect lenient treatment, was simply a statement of the obvious. We see no reasonable likelihood that disclosure of the officer's remark would have had any influence whatever on the jury.

The judgment of the district court is affirmed.

___

tor if the officer acted as an arm of the prosecution. *United States v. Morell*, 524 F.2d 550, 554 (2d Cir. 1975).