**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George JACKSON and James Jackson, Defendants-Appellants.**

**Nos. 84–2097, 85–1395.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1985.

Decided Jan. 8, 1986.

Rehearing Denied Feb. 5, 1986.

William A. Barnett, Chicago, Ill., for defendants-appellants.

Michael T. Mullen, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants' George and James Jackson were convicted of five counts of mail fraud (18 U.S.C. § 1341), one count of conspiracy to commit mail fraud (18 U.S.C. § 371), and two counts of possession of stolen interstate fuel (18 U.S.C. § 659). The Jacksons appeal their convictions alleging (1) that the government withheld evidence in contravention of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and (2) that certain exculpatory statements were erroneously held to be inadmissible by the district court. We affirm the convictions.

## I.

Throughout the time period relevant to this appeal, defendants George and James Jackson operated Sepia Trucking Company, Inc. ("Sepia"), a small family-owned fuel oil trucking firm located in Chicago. Since 1977 George Jackson had served as Sepia's president. James Jackson acted as a consultant for the firm, although he held no title and received no salary from Sepia for his services.

The government's allegations set forth that, among other Sepia personnel, defendants along with David Webb, a former driver for Sepia, were engaged in a fuel-stealing scheme that provided Sepia with the diesel fuel it needed to operate its delivery trucks. Sepia allegedly would send one of its drivers to pick up fuel at one of several oil and gas terminals. The fuel would then be transported to one of Sepia's customers and ostensibly pumped into that customer's storage tanks. However, not all of the fuel that was scheduled to be delivered was actually deposited in these storage tanks. Sepia's trucks were divided into four compartments and, by failing to open the valves to each compartment, Sepia drivers were able to appear as though they were delivering an entire truckload of fuel while in actuality retaining a portion of the fuel. The stolen fuel was then returned to Sepia's yard where it was pumped into a storage tank from which Sepia trucks were fueled.

David Webb testified that he had observed George Jackson steal fuel in this manner from the Amtrak railroad station from September to December 1977. In the spring of 1978, Webb testified that he was assigned to the Amtrak run and was told by George Jackson to bring back fuel exactly as he had been trained. In 1979, when Amtrak severed its relationship with Sepia, Webb was assigned to deliver fuel to the Norfolk and Western Railway Company, Inc. ("Norfolk and Western"). Webb again testified that he was instructed, this time by James Jackson, to keep Sepia's storage tank full so that the company would not run short of fuel. Webb stated that he informed George Jackson each time he returned stolen fuel to the Sepia yard. In late 1980 and early 1981, Norfolk and Western implemented new devices to monitor its fuel consumption and fuel deliveries from suppliers such as Sepia. Webb testified that thereafter he never stole fuel again from Norfolk and Western.

Beginning in early 1981, an investigation of Sepia's scheme was conducted by the FBI. Special Agent Kenneth Veach, who was assigned to the case, elicited help from David Webb. On January 11 and 17, 1983, Webb, using a hidden microphone, recorded

conversations he had with George and James Jackson regarding Sepia's operation. During these conversations the defendants denied any knowledge of the fuel-stealing scheme. In addition, Agent Veach, in discussions with the Director of Security for the Standard Oil Company, mentioned that Webb might be a possible candidate for employment as a station manager. Standard Oil was contemplating a private undercover investigation of fuel thefts and needed someone to pose as a station manager as part of its investigation. Webb was ultimately hired by Standard Oil in this capacity. For his services Webb received, among other things, a salary of $24,000 per year plus the use of an automobile. The FBI, at Standard Oil's request, provided license plates for the automobile so that Standard Oil could not be identified as the owner of the vehicle.

As a result of their involvement with Sepia, George and James Jackson and David Webb, among others, were indicted and charged with mail fraud, conspiracy to commit mail fraud, and knowing possession of stolen interstate fuel. In exchange for a government promise to withhold recommendation as to a sentence, Webb pled guilty and agreed to testify for the prosecution. George and James Jackson pled not guilty, and, after a jury trial, the Jacksons were found guilty. Judge Marvin E. Aspen sentenced the Jacksons to two and one-half years in prison and placed them on probation for five years.

Thereafter the Jacksons filed an appeal that was ultimately dismissed by this court for want of prosecution. In February 1985, defendants moved for a new trial on the basis of newly discovered evidence. The district court denied this motion and the defendants now appeal this denial.[1]

## II.

The defendants' first contention is that their due process rights were violated by the government's failure to disclose the true nature of Webb's employment relationship with Standard Oil in violation of *Brady v. Maryland, supra.* Under *Brady* and its progeny, the prosecution's suppression of material evidence favorable to the defendant, even if such evidence is not requested by the accused, is a violation of due process. *United States v. Allain,* 671 F.2d 248, 255 (7th Cir.1982) (citing *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). To make a successful claim under *Brady,* the defendants must establish (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material. *E.g., United States v. Sink,* 586 F.2d 1041, 1051 (5th Cir.1978), *cert. denied,* 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979).

The government does not deny that it failed to disclose all of the knowledge it had regarding Webb's specific employment relationship with Standard Oil. Indeed, the government admits that it failed to disclose that Agent Veach had introduced Webb to Standard Oil as a possible candidate for the company's undercover scheme and that the FBI had helped Standard Oil obtain license plates for the automobile that was provided for Webb's use.[2]

---

1. Pursuant to the defendants' motion, we recalled the mandate of the initial appeal (No. 84–2097) that was dismissed for want of prosecution and consolidated that appeal with the current appeal (No. 85–1395).

2. The government attorneys involved in prosecuting this case were apparently unaware of David Webb's relationship with Standard Oil until after the trial was concluded. Throughout this period, however, FBI Special Agent Kenneth Veach admittedly knew of Webb's employment relationship with Standard Oil and failed to disclose this information to the prosecution team. The defendants argue, and the govern-

ment does not contest, that Veach's knowledge is attributable to the government for purposes of determining whether their due process rights were violated when the information was not disclosed. *See, e.g., United States ex rel. Smith v. Fairman,* 769 F.2d 386, 391–92 (7th Cir.1985); *Wedra v. Thomas,* 671 F.2d 713, 717–18 n. 1 (2d Cir.) (ruling that "the knowledge of a police officer may be attributable to the prosecutor if the officer acted as an arm of the prosecution."), *cert. denied,* 458 U.S. 1109, 102 S.Ct. 3491, 73 L.Ed.2d 1372 (1982); *United States v. Butler,* 567 F.2d 885, 891 (9th Cir.1978) (noting that "[t]he prosecutor is responsible for the nondisclosure

Nor does the government seriously contest that this undisclosed evidence is not favorable to the defendants. The only issue raised, therefore, is whether the undisclosed information is material. Even given the government's suppression of favorable information, the defendants are entitled to a new trial only if they can establish the materiality of the unrevealed evidence. *United States v. Esposito*, 523 F.2d 242, 248 (7th Cir.1975), *cert. denied*, 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 768 (1976) (citing *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) ). *Accord United States v. Solomon*, 688 F.2d 1171, 1178 (7th Cir.1982).

In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court noted three distinct standards for ascertaining whether information in the government's possession is material and therefore required to be disclosed to a defendant. The first standard of materiality was held applicable where the "undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury." *Id.* at 103, 96 S.Ct. at 2397 (footnote omitted). In this situation, the Court ruled that the suppressed evidence was material "if there [was] any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (footnote omitted). *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959); *United States ex rel. Wilson v.*

*Warden Cannon*, 538 F.2d 1272, 1277 (7th Cir.1976). The Court ruled that a second standard of materiality applied to cases in which the defendant made a "pretrial request for specific evidence." *Agurs*, 427 U.S. at 104, 96 S.Ct. at 2397. In such a case, undisclosed evidence was deemed material if its disclosure "might have affected the outcome of the trial." *Id.* A third standard of materiality was held to be applicable where the defendant either made no request for exculpatory information or the request was so broad that the government was given "no better notice" of what the defendant was seeking "than if no request [had been] made." *Id.* at 106–107, 96 S.Ct. at 2398–99. In such a case, undisclosed evidence was held by the Court to be material only if it would create "a reasonable doubt that did not otherwise exist." *Id.* at 112, 96 S.Ct. at 2401.

The Supreme Court has since further developed its holding in *Agurs*. In *United States v. Bagley*, — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court, in a divided opinion, suggests that only one standard of materiality applies to the latter two situations described by *Agurs;* namely, the " 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused...." *Id.*, 105 S.Ct. at 3384. *See United States ex rel. Smith v. Fairman*, 769 F.2d 386, 393 (7th Cir.1985). In these cases, Justice Blackmun, joined by Justice O'Connor, noted that "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding

of assurances made to his principal witnesses even if such promises by other government agents were unknown to the prosecutor."); *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 844, 846 (4th Cir.1964). *See also United States v. Esposito*, 523 F.2d 242, 248 (7th Cir. 1975), *cert. denied*, 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 768 (1976). In addition, the defendants contend, based on the affidavit of Webb's former attorney, that Veach actually instructed Webb to conceal from the jury the FBI's involvement with Webb's employment with Standard Oil.

Regardless of whether Agent Veach instructed Webb to conceal the FBI's involvement, Veach

did admit that he knowingly failed to inform the government prosecutors about Webb's relationship with Standard Oil. We find Veach's conduct, based only upon what we can discern from this record, inexcusable and wish to make clear that although we affirm the defendants' convictions, our decision should not be construed as the slightest approval of Veach's actions which fall well below the integrity and fairness standard expected of federal law enforcement personnel. It would be misguided zeal for a law enforcement officer to decide that the end justified the means in order to make sure that a guilty defendant did not slip through the judicial process.

would have been different." *Bagley*, 105 S.Ct. at 3384. Justice Blackmun went on to define a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.* Writing a separate concurrence, Justice White, joined by Chief Justice Burger and Justice Rehnquist, agreed that the reasonable probability standard is the appropriate standard of materiality. *Id.* at 3385. We therefore may assume that a majority of the Supreme Court has adopted the reasonable probability standard as the governing standard of materiality for the *Brady* rule, at least in cases where the prosecution's knowing use of false testimony is not an issue. *See United States v. Ben M. Hogan Co.*, 769 F.2d 1293, 1299 (8th Cir.1985).

In the Jacksons' case, the application of the reasonable probability standard simplifies our analysis. Under *Agurs*, in order to apply the appropriate standard of materiality, we would have been required to determine whether the defendants had made a specific request for exculpatory evidence. Indeed, the government argues that James Jackson's request was not sufficiently specific to cover Webb's situation. There is also some doubt about whether George Jackson ever made a request for exculpatory information. These issues need no longer concern us, however, since under *Bagley* the reasonable probability standard is applicable irrespective of whether a defendant specifically requested exculpatory evidence.

Applying the reasonable probability standard to the present case, we find that the defendants are not entitled to a new trial. We do not believe that disclosure of the unrevealed evidence creates a reasonable probability that "the result of the proceeding would have been different." *Bagley*,

105 S.Ct. at 3384. The sole issue in question is whether the disclosure of Webb's employment relationship with Standard Oil would have so undermined the jury's confidence in his credibility that the result the jury reached could have been different.[3] The defendants argue that Webb had a motive to lie to establish his role as a valuable informant for Standard Oil and that disclosure of this information was necessary to ensure a fair trial. We disagree.

The defendants' argument is premised on the assumption that a jury would perceive that Standard Oil would actually base its judgment on Webb's value as an informant on whether or not the defendants were found guilty. To the contrary, apart from any interest Standard Oil may have in ensuring that justice is done, we believe that a reasonable jury would conclude that Standard Oil would base its judgment of Webb's usefulness as an informant on how instrumental he was in apprehending persons who were stealing fuel from Standard Oil, as opposed to those stealing from other companies. Perhaps the defendants' argument would have some credence were Webb testifying against persons accused of stealing fuel from his employer. In such a case, we can imagine that a witness could be perceived as having a motive to lie as a means of pleasing his employer. In the context of this case, however, we are unable to imagine how any rational jury could conclude that Webb would have had a motive to lie in testifying against the Jacksons as a means of currying favor with Standard Oil, then his employer.

■ Moreover, the jury was provided with sufficient evidence from which it could have concluded that Webb's credibility was subject to serious question. The govern-

---

**3.** Our analysis is not altered by the fact that the undisclosed evidence goes only to Webb's credibility and is not substantive evidence of the defendants' innocence. "When the 'reliability of a given witness may be determinative of guilt or innocence' nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3

L.Ed.2d 1217 (1959) ). *Accord United States v. Sweeney*, 688 F.2d 1131, 1141 (7th Cir.1982) (noting that evidence disclosed under *Brady* includes "material which might be used to impeach a government witness."). Indeed, the Supreme Court just recently reaffirmed the point that "[i]mpeachment evidence ... as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985).

ment did disclose Webb's previous criminal background, his guilty plea and plea bargain to the charges involved here, as well as statements he made to Agent Veach in which he initially denied involvement in the fuel-stealing scheme. In addition, the jury was told that Webb had worn a hidden microphone in cooperation with the FBI during two conversations he had with James and George Jackson. It was also revealed that Webb had stolen fuel for his own personal gain on six separate occasions. Faced with this evidence, the significance of the undisclosed evidence is further diminished. *See United States v. McKenzie*, 768 F.2d 602, 610 (5th Cir.1985) (holding that non-disclosure of cumulative impeachment evidence is not a basis for vacating conviction); *United States v. Mackey*, 571 F.2d 376, 389 (7th Cir.1978). As this court has noted, "the materiality determination is not to be made in a vacuum; rather it must be made in the context of all the evidence introduced at trial." *Esposito*, 523 F.2d at 248. In light of the evidence presented at the defendants' trial, we do not believe there is a reasonable probability that disclosure of the evidence regarding Webb's Standard Oil employment would lead to a different result in this case. *See Bagley*, 105 S.Ct. at 3384. Our "confidence in the outcome" has not been undermined, *id.*, and, accordingly, we hold that the defendants' due process rights were not violated by the government's failure to disclose all it knew about Webb.[4]

■ The defendants nonetheless argue that the standard of materiality that should be used in their case is that which applies when the government has knowingly used false testimony. In *Giglio* the Supreme Court ruled that a new trial would be required in such a case if the " 'false testimony could ... in any reasonable likelihood have affected the judgment of the jury....' " 405 U.S. at 154, 92 S.Ct. at 766 (quoting *Napue*, 360 U.S. at 271, 79 S.Ct. at 1178). The defendants argue that the government in their case knowingly used the false testimony of David Webb and that, therefore, the less stringent standard of materiality should be applied. The defendants rely on two statements made by Webb at trial to support their contention. First, in response to a question posed by the prosecution, Webb, after acknowledging that he worked at a Standard Oil station, replied that his work there involved "pumping gas." Second, on cross-examina-

---

4. The defendants, relying on our decisions in *Esposito*, 523 F.2d at 248–49 and *United States v. Disston*, 612 F.2d 1035, 1038 (7th Cir.1980), argue that bad faith on the part of the government should alter our judgment regarding the materiality of the undisclosed evidence. Indeed, in *Esposito* we noted that "a court should be less inclined to hold unproduced evidence immaterial ... if the prosecutor's failure to reveal the evidence was not in good faith." 523 F.2d at 248–49. At the same time, we are cognizant of the decision in *United States v. Agurs* where the Supreme Court noted:

> Nor do we believe the constitutional obligation [to disclose material evidence] is measured by the moral culpability, or the willfulness, of the prosecutor.... If the suppression of evidence results in constitutional error, it is because of the *character of the evidence, not the character of the prosecutor.*

427 U.S. at 110, 96 S.Ct. at 2400 (emphasis added) (footnote omitted). *See also Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982) (noting "that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").

We do not believe that our decisions in *Esposito* and *Disston* are inconsistent with *Agurs.* *Cf. Fairman*, 769 F.2d at 391. The decisions of this court merely point out that in cases where the materiality of the evidence has not been conclusively determined, we will look to the bad faith of the government, if it exists, to assist our judgment. In actuality, this process involves nothing more than plain common sense. The fact that the government seeks in bad faith to suppress certain evidence indicates that such evidence may indeed be material. We are doubtful that any prosecutor would in bad faith act to suppress evidence unless he or she believed it could affect the outcome of the trial. In short, the existence of bad faith is merely a factor a court may consider in making its materiality determination.

In the instant case, the question of materiality is not so close that it requires us to examine the issue of the government's alleged bad faith. Accordingly, we express no opinion as to whether Agent Veach's bad faith in failing to inform the prosecution team of Webb's employment with Standard Oil is attributable to the government even though the United States Attorney acted in good faith.

tion Webb replied in the affirmative when asked whether he leased the service station. The defendants, contending that Webb was acting solely as an informant, argue that his testimony is clearly false and that this court should apply the *Giglio* standard in determining whether their due process rights were violated when the government left the "fallacious" testimony stand uncorrected.

Under the Supreme Court's *Bagley* decision, the *Giglio* standard still appears to be applicable in cases where the prosecution knowingly uses false testimony. *Bagley*, 105 S.Ct. at 3384 (Blackmun and O'Connor, JJ.) (applying the reasonable probability standard solely to " 'no request,' 'general request,' and 'specific request' cases"); *id.* at 3396 (Marshall, J., joined by Brennan, J., dissenting); *id.* at 3400 n. 6 (Stevens, J., dissenting). We need not reach this issue, however, since we find that Webb did not testify falsely. It can be readily assumed that Webb may indeed have pumped gas as part of his duties as station manager; there is no evidence in the record that would contradict this assumption. Moreover, Webb's agreement with Standard Oil required that he "operate and manage the station as an independent dealer in accordance with the terms of the *service station lease. . . .*" (emphasis added). In light of this evidence, Webb's testimony that he pumped gas and leased the station appear to be entirely correct. The mere fact that he chose not to elaborate on his answers does not constitute perjury, false testimony or deliberate misrepresentation. The defendants' attorneys were free on cross-examination to question Webb in greater depth as to his relationship with Standard Oil and his duties as station manager. The fact that they did not cannot transform Webb's statements into false testimony. We therefore find, even assuming the continued viability of the *Giglio* standard, that it is inapplicable here.

■ Apart from the issue of Webb's credibility, the defendants also argue that they are entitled to a new trial based on evidence relating to Agent Veach's credibility, since Veach also testified at the Jacksons' trial. The defendants contend that the fact that Veach failed to inform the government prosecutors about Webb's situation and allegedly attempted to conceal the FBI's involvement with Webb's employment, *see supra* note 2, is "material evidence against Veach's credibility which should be presented to any jury deciding [their] guilt or innocence." (Defendants-Appellants' Br. at 29).

The defendants appear to argue that the evidence going to Veach's credibility is material and should have been disclosed pursuant to the *Brady* rule. If this is the defendants' contention, it misses the mark. The only evidence that the government suppressed, about which the prosecutors were unaware, that is relevant to *Brady* is that evidence concerning Webb's relationship with Standard Oil. The evidence going to Veach's credibility is not *Brady* material; rather it is simply newly discovered evidence. The defendants admit as much when they argue that they are entitled to a new trial under *Brady* based only "upon the government's failure to reveal the nature of David Webb's employment," (Defendants-Appellants' Br. at 10), and not on the basis of evidence relevant to Veach's credibility.

Pursuant to Fed.R.Crim.P. 33, "to obtain a new trial on the basis of newly discovered evidence, a defendant must show that the evidence in question (1) came to the defendant's knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial." *United States v. Goodwin*, 770 F.2d 631, 639 (7th Cir.1985). *Accord United States v. Cherek*, 734 F.2d 1248, 1253 (7th Cir. 1984), *cert. denied*, — U.S. —, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985); *United States v. Oliver*, 683 F.2d 224, 228 (7th Cir.1982). Even without considering the first two factors, we find that the defendants fail to satisfy this test. First, the defendants admit that the newly discovered evidence

serves only to impeach Veach's credibility and is not substantive evidence of the defendants' guilt or innocence. Second, we also find that disclosure of this evidence would not lead to the defendants' acquittal if a new trial were granted. The defendants readily concede that it was primarily the testimony of David Webb, and not Agent Veach, that led to their convictions. In this context, the defendants are unable to establish, even if a jury were to give no weight to Veach's testimony, that a new trial would probably lead to their acquittal. Accordingly, the defendants are not entitled to another trial on the basis of the newly discovered evidence.

■ Nonetheless, the defendants argue in the alternative that if we deny their request for a new trial, they are at least entitled to a remand for an evidentiary hearing. The defendants claim they are entitled to such a hearing because (1) the record lacks sufficient facts relating to the government's bad faith; (2) they should be given an opportunity to show that the undisclosed evidence is material; and (3) the government may be concealing relationships or agreements it had with other witnesses that testified against them.

We find the defendants' contention without merit and see no need for a "more complete development of the facts" that an evidentiary hearing might produce. *United States v. Disston*, 582 F.2d 1108, 1112 (7th Cir.1978). First, we do not find the question of materiality such a close one that it requires our examination of the government's alleged bad faith. *See supra* note 4. Second, the defendants have already, through this appeal, been given the opportunity to establish the materiality of the undisclosed evidence. The fact that we have found that the evidence is not materi-

al does not entitle the defendants to a second bite of the apple. An evidentiary hearing at this point would simply be repetitious. Finally, the defendants' claim that the government may have had undisclosed arrangements with other prosecution witnesses is to speculative a base upon which to justify our remanding this case for an evidentiary hearing. *See United States v. Navarro*, 737 F.2d 625, 631 (7th Cir.1984) ("[m]ere speculation that a government file may contain *Brady* material is not sufficient to require a remand for *in camera* inspection"), *cert. denied sub nom. Mugercia v. United States*, — U.S. —, 105 S.Ct. 438, 83 L.Ed.2d 364 (1984). The defendants present no evidence that would substantiate their assertion. If we were to remand for a hearing solely on the basis of this speculative claim, the defendants' ability to pursue their appeal would be unjustifiably prolonged. Given these circumstances, we conclude that the defendants are not entitled to an evidentiary hearing.

### III.

■ The defendants' second major contention is that they are entitled to a new trial because the district court erroneously found the substance of certain exculpatory statements to be inadmissible. On two occasions in January 1983, David Webb, equipped with a hidden microphone, recorded conversations he had with George and James Jackson. During these conversations, which occurred two years after the fuel-stealing scheme had ended, the defendants denied any wrongdoing. The district court ruled that the recorded statements themselves were inadmissible as "self-serving ... consistent statements." (Tr. at 7–8). The defendants now argue that the district court was in error,[5] and contend

---

5. The defendants argue that the district court excluded their statements solely on the grounds that they were "self-serving." In *United States v. Dellinger*, 472 F.2d 340 (7th Cir.1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), we noted that "[a] flat rule against self-serving declarations ... no longer makes sense," *id.* at 382, and that such a rule excluding evidence "even though otherwise free from objection under the hearsay rule and its excep-

tions, detracts from the fund of relevant information which should be available to the jury, without, in compensation, materially insuring the integrity of the trial process." *Id.* at 381. The defendants argue that exclusion of their statements as self-serving is therefore reversible error. We disagree.

As we noted in *Dellinger,* the appropriate rule for barring the self-interested declarations of a

that the substance of their statements are admissible on any one of three alternative grounds: (1) as non-hearsay evidence of conduct inconsistent with guilt; (2) as evidence of the defendants' state of mind and lack of fraudulent intent; or (3) as evidence falling within the general exception to the hearsay rule.

In reviewing evidentiary rulings, this court has consistently held that a trial court's decision on the admissibility of evidence should not be overturned "absent a clear showing of abuse of discretion." *United States v. Harris*, 761 F.2d 394, 398 (7th Cir.1985). We find that the district court here, in refusing to admit the defendants' prior consistent statements, *see* Fed. R.Evid. 801(d)(1), did not abuse its discretion.

The defendants first argue that their statements are admissible as non-hearsay evidence.[6] The defendants contend that their statements are not being offered "to prove the truth of the matter asserted," Fed.R.Evid. 801(c),[7] but are offered only as evidence of the defendants' conduct inconsistent with guilt. The Jacksons maintain that they had no reason to deny their thefts to Webb, who was involved in the fuel-stealing scheme himself, and that therefore their statements denying guilt are admissible not to prove the truth of the matter asserted, but as evidence of conduct indicative of their innocence.

The defendants are indeed correct that under the Federal Rules of Evidence "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Advisory Committee Note to Fed.R.

Evid. 801(c). *See United States v. Anost*, 356 F.2d 413, 418 (7th Cir.1966); *United States v. Press*, 336 F.2d 1003, 1011 (2d Cir.1964), *cert. denied*, 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559 (1965), *reh'g denied*, 380 U.S. 927, 85 S.Ct. 887, 13 L.Ed.2d 815 (1965) ("statements inadmissible to prove the truth of what they assert may be admitted if the fact of the assertion is in itself relevant irrespective of its truth."). We nonetheless find that the district court did not abuse its discretion in excluding the exculpatory statements. The defendants' statements to Webb would be inconsistent with their guilt only if we assume that they had continued to view Webb solely as a "co-conspirator." However, there is evidence in the record indicating that by 1981 Webb had already had contact with the FBI regarding the fuel-stealing scheme. Webb testified at trial that Agent Veach had come to his home and questioned him about the fuel thefts. Webb stated that he had told James Jackson about the incident and that Jackson had told him to "just keep [his] mouth shut, because [the FBI was] only trying to rattle some bones." (Tr. at 110). Over a year later, while wearing a recording device, Webb attempted to draw the Jacksons into a conversation regarding the fuel thefts. By this time, Webb had been cooperating with the FBI in its investigation for approximately four months. Moreover, a grand jury had recently subpoenaed records belonging to the Jacksons' oil company. In light of this evidence, the district court could reasonably have assumed that the Jacksons' statements were not necessarily inconsistent with guilt, but rather an attempt to cover their tracks. Indeed, the district court may well have had this in mind when it labeled the defend-

party is actually the hearsay rule. 472 F.2d at 381 (quoting McCormick, Evidence, 1954 ed., p. 588). Accordingly, such self-serving declarations are admissible only if they can be either characterized as non-hearsay or if they fall within one of the exceptions to the hearsay rule. *See* Fed.R.Evid. 801–804. Since we conclude that the defendants' statements here are inadmissible hearsay, *see infra,* we find that the district court did not abuse its discretion in excluding them under the self-serving rubric.

6. Fed.R.Evid. 802 provides: "Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."

7. Fed.R.Evid. 801(c) provides: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

ants' statements as "self-serving." In such a case, the significance of the offered statements does not lie "solely in the fact that [they were] made," Advisory Committee Note to Fed.R.Evid. 801(c), and, accordingly, we find that the district court did not abuse its discretion in excluding the alleged exculpatory evidence.

Even conceding that the statements are hearsay, the defendants argue that they are still admissible under the state of mind exception to the hearsay rule. In pertinent part, Fed.R.Evid. 803(3) excludes from the hearsay rule "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed...." The defendants contend that their disclaimers of guilt fall within this exception to the hearsay rule as showing lack of criminal intent. However, the defendants' criminal intent or lack thereof in January 1983, when the statements were made, was not an issue at their trial; rather, the issue at trial was whether the defendants had been involved in a fuel-stealing scheme two years earlier. The defendants are attempting to introduce statements relevant to their state of mind in 1983 as indicative of their actions before that time. Admission of such evidence is prohibited by Fed.R.Evid. 803(3) which, for our purposes, excludes from the state of mind exception to the hearsay rule "statement[s] of memory or belief to prove the fact remembered...." *See* Advisory Committee Note to Fed.R.Evid. 803(3) (this exclusion "is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."); *Prather v. Prather*, 650 F.2d 88, 90 (5th Cir.1981); 4 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 803(03)[05] (1985).

■ We also note that the defendants' statements were made two years after the fuel-stealing scheme had ended. In determining whether statements relative to the declarant's state of mind are admissible under Fed.R.Evid. 803(3), three requirements must be satisfied: (1) "the statements must be contemporaneous with the ... event sought to be proven;" (2) "it must be shown that the declarant had no chance to reflect—that is, no time to fabricate or to misrepresent his thoughts;" and (3) "the statements must be shown to be relevant to an issue in the case." *United States v. Layton*, 549 F.Supp. 903, 909 (N.D.Cal.1982). *See* Advisory Committee Note to Fed.R.Evid. 803 (noting that state of mind exception to the hearsay rule "is essentially a specialized application" of the present sense impression exception, Fed.R. Evid. 803(1), which is based upon the theory "that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation."); *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980), *rev'd on other grounds in United States v. DeBright*, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc). In short, statements relating to a person's state of mind have probative value mainly because the declarant has no chance to reflect upon and perhaps misrepresent his situation.

The Jacksons, on the other hand, had two years to reflect upon their actions and potentially an incentive to misrepresent the truth in their conversations with Webb. In addition, the defendants' statements to Webb reflect only their lack of criminal intent in 1983, while the charges against them arose from actions several years earlier. We doubt that the defendants' state of mind in 1983 has any relevance to their state of mind two years earlier. *See Prather*, 650 F.2d at 90. Given the absence of contemporaneousness, the potential for deliberate misrepresentation and the questionable lack of relevance of the evidence, the district court did not abuse its discretion in refusing to admit the defendants' statements pursuant to Fed.R.Evid. 803(3).

The final argument the defendants put forth is that their statements are admissible under the catchall exception to the hearsay rule, Fed.R.Evid. 803(24). In pertinent part, Fed.R.Evid. 803(24) provides for the admissibility of "[a] statement not specifically covered by any of the foregoing exceptions [to the hearsay rule] but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of [the Federal Rules of Evidence] and the interests of justice will best be served by admission of the statement into evidence." In arguing that their statements fulfill these requirements, including the necessary "circumstantial guarantees of trustworthiness," the defendants rely heavily on Judge Aspen's statement that the recordings were "reliable and trustworthy." (Tr. at 6). The defendants' reliance on this statement is, however, misplaced.

As the government argues, and our review of the record indicates, Judge Aspen's comments appear to be directed toward the fidelity of the recordings themselves and not toward the underlying truthfulness of the statements made. Indeed, at one point Judge Aspen stated that he did not believe that the government would argue that the tapes were not "reliable and trustworthy." (Tr. at 6). Presumably Judge Aspen was not assuming that the government was conceding the heart of its case (*i.e.*, conceding that the Jacksons' denials of guilt were actually truthful statements), but only suggesting that the government was not likely to challenge the accuracy of its own recordings. This point is further buttressed by Judge Aspen's conclusion that the Jacksons' statements themselves were self-serving. Judge Aspen's characterization of these statements is consistent with a conclusion that the defendants may have fabricated their statements in an attempt to exonerate themselves. In sum, contrary to the defendants' contention, we

do not believe that Judge Aspen found the excluded statements to be trustworthy. Indeed, given the fact that the defendants may have misrepresented their situation in their conversations with Webb, we find that the district court did not abuse its discretion in excluding the recorded statements, as this evidence lacks the "circumstantial guarantees of trustworthiness" required by Fed.R.Evid. 803(24). *See United States v. DeLuca*, 692 F.2d 1277, 1285 (9th Cir.1982).

### IV.

For the reasons stated above, we find that the defendants' due process rights were not violated by the government's failure to disclose evidence relative to Webb's employment with Standard Oil and that the trial court did not err in excluding the defendants' statements disclaiming guilt. Accordingly, we affirm the decision of the district court.