[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 416.]

WHITE, APPELLANT, *v.* CLINTON COUNTY BOARD OF COMMISSIONERS ET AL.,
APPELLEES.

[Cite as *White v. Clinton Cty. Bd. of Commrs.*, 1996-Ohio-380.]

*Public records—R.C. 121.22, 149.43 and 305.10 impose a duty on all boards of county commissioners to maintain full and accurate records of their proceedings—Required contents for minutes to be "full and accurate."*

1. R.C. 121.22, 149.43 and 305.10, when read together, impose a duty on all boards of county commissioners to maintain a full and accurate record of their proceedings.

2. For public records maintained under R.C. 121.22 and 305.10, full and accurate minutes must contain sufficient facts and information to permit the public to understand and appreciate the rationale behind the relevant public body's decision.

(No. 95-953—Submitted April 30, 1996—Decided August 21, 1996.)

APPEAL from the Court of Appeals for Clinton County, No. CA94-08-20.

———————————

{¶ 1} On March 31, 1993, the Clinton County Board of Commissioners ("the Board") informed the county building and electrical inspector, Michael Richardson, that he could no longer perform joint inspections with agencies outside his department without the Board's prior written approval, and that he would be fired if he violated this directive. The Board also decided to bar building and electrical inspections unless a fire inspector and two township trustees requested the inspection.

{¶ 2} Concerned that these new policies would impact health department procedures and standards, Lizbeth White, the Director of the Clinton County Health Department's Environmental Division, tried to obtain the specifics of the new

policies. White asked the Board to provide her with minutes of the Board's discussions and adoption of the new policies. White also requested copies of Richardson's personnel files. The Board provided White with the minutes of the meeting at which the new policies were adopted, but the minutes did not mention the new policies and were missing a page. In addition, the Board did not give Richardson's personnel records to White. The Board sought the county prosecutor's opinion of the legality of the release of those records.

{¶ 3} In a letter dated April 25, 1993, White informed the clerk of the Board that a page was missing from the minutes, and that the minutes she had received did not mention the new policies. On that date, White also asked the Board to provide her with advance notice of future Board meetings. The Board did not respond to these letters. On April 29, White repeated her request. On May 5, the county prosecutor advised the Board that it had to provide White with Richardson's personnel records, and issued a written opinion to the same effect on May 10. Also on May 5, the Board asked each member of the Clinton County Board of Health for any personnel records on White and her supervisor, Health Commissioner Bob Derge. In addition, the commissioners raised the price of photocopied public records from $.25 to $1 per page. White withdrew her requests for the Board's minutes on May 19.

{¶ 4} White revived her request for records on June 17, 1993, and the Board agreed to provide her with access to its records that same day. In reviewing the Board's journal, White found no mention of the policies which precipitated her records requests.

{¶ 5} On June 29, 1993, White filed a four-count complaint against the Board and its clerk, Brenda K. Woods, in the Clinton County Court of Common Pleas.[1] On the day of trial, White withdrew all counts but Count II from the

---

1. It should be noted that this action was brought by White as a private citizen, not as the director of a health department division.

complaint. Count II alleged that "[t]he Board fail[ed] to promptly and accurately record its policies, decisions, procedures and essential transactions [in violation of] R.C.. Sections 121.22 and 149.43." The complaint sought a writ of mandamus compelling the Board "to prepare complete and accurate minutes of all Board policies, decisions, procedures and essential transactions."

{¶ 6} At the outset of trial, White conceded that the true question before the court was the interpretation of R.C. 305.10. Both County Commissioner David Stewart and Brenda Woods testified at trial, and their testimony confirmed that, although the Board has a tape-recording system and Woods took notes at the Board's meetings, the minutes did not memorialize any discussions that took place. Rather, the minutes simply reflected the Board's final roll call votes. The trial court entered judgment for White on August 2, 1994, stating that "Section 305.10 O.R.C., if read in conjunction with Section 121.22 O.R.C. (The Sunshine Statute) and Section 149.43 O.R.C. (Ohio Public Records Act), clearly indicates that the intention of the legislature is to require the Board of County Commissioners to maintain a full record of its public meetings * * *." Consequently, the court ruled that "[t]he record must reflect the decision making process leading up to the vote including debate and/or discussion of the subject matter," and ordered the Board and Woods to "fully comply" with R.C. 305.10. The court also ordered the Board to reimburse White for her legal expenses.

{¶ 7} On appeal, the Board argued that R.C. 121.22, 149.43 and 305.10 did not adequately state a clear legal right entitling White to mandamus relief. The court of appeals determined that, in its opinion, neither R.C. 121.22 nor 149.43 was implicated in White's action because the Board had complied with those statutes. Turning to R.C. 305.10, the court of appeals concluded that the statute did not create a clear legal duty on the part of county boards to maintain detailed minutes of their proceedings. Consequently, the court of appeals reversed the trial court's grant of

a writ of mandamus. The court also ruled that the trial court's grant of attorney fees was erroneous.

{¶ 8} The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Baker & Hostetler*, *David L. Marburger, Hilary W. Rule* and *Elizabeth McNellie*, for appellant.

*Isaac, Brant, Ledman & Teetor, Mark Landes* and *Terri B. Gregori*; and *William E. Peele*, Clinton County Prosecuting Attorney, for appellees.

*Paul Moke*, urging reversal for *amicus curiae*, American Civil Liberties Union of Ohio.

*Stephen W. Gard*, urging reversal for *amicus curiae,* Investigative Reporters and Editors.

*Susan M. Giles*, urging reversal for *amicus curiae*, League of Women Voters of Ohio.

———————————

**STRATTON, J.**

{¶ 9} This case involves the interpretation of R.C. 305.10, and its interplay with R.C. 121.22 (the Sunshine Law) and 149.43 (Ohio Public Records Act). White argues that these statutes impose a duty on boards of county commissioners to prepare minutes which reflect the substance of their meetings and provide some indication of the nature and direction of their discussions. A different reading, the appellant contends, would render R.C. 121.22 and 305.10 meaningless. The appellees, on the other hand, claim R.C. 305.10 does not require that minutes contain the type of specific information that White seeks, and that R.C. 121.22 is satisfied when *any* record is kept, regardless of how sparse the information is. We agree with the appellant and conclude that these statutes, when read together, impose a duty on boards of county commissioners to maintain a full and accurate

4

record of their proceedings. Because we find that R.C. 121.22, 149.43, and 305.10 require the minutes of boards of county commissioners meetings to include more than a record of mere roll call votes, we reverse the court of appeals and reinstate the trial court's grant of mandamus relief.

{¶ 10} One of the strengths of American government is the right of the public to know and understand the actions of their elected representatives. This includes not merely the right to know a government body's final decision on a matter, but the ways and means by which those decisions were reached. There is great historical significance to this basic foundation of popular government, and our founding fathers keenly understood this principle.

{¶ 11} James Madison clearly laid out this strength of our government when he said that:

"A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps, both. Knowledge will forever govern ignorance; And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives." The Complete Madison, His Basic Writings (1988) 337 (Letter to W.T. Barry, August 4, 1822).

{¶ 12} Thomas Jefferson further expounded on this principle:

"The way to prevent [errors of] the people, is to go give them full information of their affairs throu' the channel of the public papers, and to contrive that those papers should penetrate the whole mass of the people. The basis of our governments being the opinion of the people, the very first object should be to keep that right * * *." 11 The Papers of Thomas Jefferson (1955) 49 (Letter to Col. Edward Carrington, January 16, 1787).

{¶ 13} Ohio's own history is replete with rich examples of detailed records dating back to the 1800s. *Amicus* League of Women Voters of Ohio cites many rich examples of the long and illustrious record-keeping of our forebears. In fact, when the Ohio legislature created the first boards of county commissioners, it

included in that creation a requirement that accurate records be kept by the county commissioners. See 2 Ohio Laws 150. In 1804, in "An act establishing boards of commissioners," the Ohio legislature required:

"Sec. 9. * * * That the commissioners shall have a just and accurate record kept of all their corporate proceedings, and for that purpose they are hereby empowered to appoint a clerk * * * ." *Id*. at 153. That mandate continues through today in R.C. 305.10, requiring that the clerk "keep a full record of the proceedings of the board."

{¶ 14} The question arises as to what is meant by a "full record." To understand what is meant by "full record," one must look at the purpose and meaning behind keeping records. As several of the *amici* briefs point out, keeping an accurate record serves many useful functions. First of all, such records provide rich detail as to the history and culture of our country, as our government officials embody the wishes and desires of the people in making their decisions. Sometimes, difficult decisions are reached which go against popular opinion, but which may be necessary for the common good as determined by the governing bodies. Accurate minutes can reflect the difficult decision-making process involved, and hopefully bring the public to a better understanding of why unpopular decisions are sometimes necessary. As the court stated in *Dayton Newspapers, Inc. v. Dayton* (1976), 45 Ohio St. 2d 107, 109, 74 O.O.2d 209, 211, 341 N.E. 2d 576, 577:

"'The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people.'" (Citing *State ex rel. Patterson v. Ayers* [1960], 171 Ohio St. 369, 371, 14 O.O.2d 116, 117, 171 N.E.2d 508, 509.)

{¶ 15} Second, public scrutiny is necessary to enable the ordinary citizen to evaluate the workings of his or her government and to hold government accountable. If the public can understand the rationale behind its government's decisions, it can challenge or criticize those decisions as it finds necessary; the

entire process thus allows for greater integrity and prevents important decisions from being made behind closed doors.

{¶ 16} Third, keeping full minutes allows members of the public who are unable to attend the meetings in person to obtain complete and accurate information about the decision-making process of their government. In *Cox Broadcasting Corp. v. Cohn* (1975), 420 U.S. 469, 491, 95 S.Ct. 1029, 1044, 43 L.Ed.2d 328, 347, the United States Supreme Court noted that:

"[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations." Accord *State ex rel. Dayton v. Phillips* (1976), 46 Ohio St.2d 457, 467, 75 O.O.2d 511, 516, 351 N.E.2d 127, 134.

{¶ 17} In addition to the media's coverage, the interested citizen should also be able to examine personally those decisions and the decision-making process involved. Most people's day-to-day schedule leaves them with far too little time to attend government meetings. Therefore, the opportunity to examine a full and complete copy of the minutes enables the citizens of Ohio to stay informed about the actions and thoughts of their elected officials.

{¶ 18} The ready availability of tape recorders, video cameras, and computers provides government bodies with simple means of recording their deliberations. Indeed, we note that detailed handwritten minutes were kept of early county commissioner meetings, and provided rich historical detail without the benefit of current technology. However, the Clinton County Commissioners did not need to handwrite transcripts--they had purchased a recording system and simply neglected to use it.

{¶ 19} Having examined the principles embodied in these three statutes, we now direct ourselves to their application in the instant case. The version of R.C. 121.22 in effect at the time that White brought her mandamus action states that:

"(C)  All meetings of any public body are declared to be public meetings open to the public at all times. * * *

"The minutes of a regular or special meeting of any such public body shall be promptly recorded and open to public inspection.  The minutes need only reflect the general subject matter of discussions in executive sessions authorized under division (G) of this section."  (144 Ohio Laws, Part II, 1855-1856.).  Boards of county commissioners are "public bodies" within the meaning of R.C. 121.22.[2]  Accordingly, such boards must prepare, file and maintain the minutes of their regular and special meetings in accordance with that statute.[3]

{¶ 20} This court analyzed the language of R.C. 121.22 in some depth in *State ex rel. Fairfield Leader v. Ricketts* (1990), 56 Ohio St. 3d 97, 564 N.E. 2d 486.  In that case, we held that a board of county commissioners has a clear legal duty to record descriptions of pre-arranged discussions in its minutes.  Majorities of the Fairfield County Board of Commissioners, the Board of Trustees of Violet Township, and the Council of the village of Pickerington had met for a workshop to discuss traffic, sewer and water matters, but denied casting any votes or making any final decisions.  The court ruled that because the members of a public body had met as a majority group, *i.e.*, the Fairfield County and Violet Township respondents, R.C. 121.22(C) applied, and minutes of the meeting were therefore

---

2.  A "public body" is defined as "any board, commission, committee, or similar decision-making body of a state agency, institution, or authority, and any legislative authority, or board, commission, committee, agency, authority, or similar decision-making body of any county, township, municipal corporation, school district, or other political subdivision or local public institution."  Former  R.C. 121.22 (B)(1).  (144 Ohio Laws, Part II, 1855.)

3.  The word "minutes" is not defined in the Revised Code.  Consequently, we impart to "minutes" its common definition: "a series of brief notes taken to provide a record of proceedings * * *:  an official record composed of such notes."  Webster's Third New International Dictionary (1986) 1440.

necessary.[4] However, the court in *Fairfield Leader* did not explain how detailed public records must be. To gain such an understanding in the context of county commissioners meetings, we look to R.C. 305.10.

**{¶ 21}** R.C. 305.10 mandates that "[t]he clerk of the board of county commissioners shall keep a full record of the proceedings of the board, and a general index of such proceedings, entering each motion with the name of the person making it on the record." It is the appellees' position that R.C. 305.10's phrase "a full record of the proceedings of the board" is an umbrella phrase which simply encompasses the specific items mentioned in the later portions of R.C. 305.10.[5] Consequently, the appellees argue, so long as the minutes of a board of county commissioners include those items, the minutes fully comply with R.C. 305.10. In addition, the appellees claim that R.C. 121.22 has been satisfied, because that statute "simply requires that whatever minutes are maintained must be promptly recorded and made available to the public."

**{¶ 22}** R.C. 305.10 does not contain a definition of "full record" or "proceedings." As a result, we give these words their plain and ordinary meaning. *Coventry Towers, Inc. v. Strongsville* (1985), 18 Ohio St.3d 120, 122, 18 OBR 151, 152, 480 N.E.2d 412, 414. Webster's Third New International Dictionary (1986) 918, 919, defines "full" as "containing all that can possibly be placed or put within";

---

4. The court also ruled against the village of Pickerington, but based that determination on portions of Pickerington's charter and administrative code which required the village council to keep minutes of its regular and special meetings.

5. Specifically, R.C. 305.10 states that the clerk of the board "shall call and record the yeas and nays on each motion which involves the levying of taxes or appropriation or payment of money * * * [,] shall state fully and clearly in the record any question relating to the powers and duties of the board which is raised for its consideration by any person having an interest therein, together with the decision on such question, and shall call and record the yeas and nays by which the decision is made. When requested by a party interested in the proceedings or by his counsel, the clerk shall record any legal proposition decided by the board, the decision thereon and the votes by which the decision is reached. If either party, in person or by counsel, except to such decision, the clerk shall record the exceptions with the record of the decision."

"containing all details: complete." Accordingly, a "full record" would be one in which the details of the recorded event are contained. "Proceedings" are defined as "an official record or account (as in a book of minutes) of things said or done (as at a meeting or convention of a society)." *Id.* at 1807. In light of these common definitions, as well as the reasons stated above and those which follow, we reject the appellees' arguments as failing to satisfy the purpose and meaning of the three statutes.

{¶ 23} Although the appellees are correct that R.C. 305.10 does enumerate specific items which the clerk of a board of county commissioners must include in the minutes of the board's proceedings, those items are not exhaustive. Rather, R.C. 305.10 operates simply as a statutory checklist of those items for which the clerk bears the initial responsibility of making available to the public for review. It does not, however, excuse either the county commissioners or their clerk from observing the more fundamental requirements of R.C. 121.22, which are imposed upon all public bodies. Indeed, we hold that R.C. 305.10's requirement for the clerk of a board of county commissioners to keep a "full record" of the board's proceedings implicitly includes a duty on the part of the clerk and the board to comply with the more comprehensive requirements of R.C. 121.22.

{¶ 24} Had the commissioners maintained a full record that included the rationale and decision-making process of the orders that they issued, White would have had a better understanding of these orders. She could have challenged the rationale for those orders, or she could have understood the process and accepted the commissioners' decision. But with no discussion of the decision-making process, or of the orders that were ultimately issued, White was unable to exercise her rights as a citizen to challenge the decision of those public bodies elected to represent her. Full disclosure would have removed the process's secretive nature and opened it to public scrutiny. Unfortunately, the facts make it clear that this is precisely what the Clinton County Board of Commissioners did *not* do.

**{¶ 25}** As already noted, R. C. 121.22 requires the preparation, filing, and maintenance of a public body's minutes. Granted, the statute does not explicitly state what should be included in the minutes of a county board of commissioners' meeting. However, we can glean more about the requirements of R.C. 121.22(C) by examining the last sentence of that subsection, which states that the minutes of a public body's *executive sessions* "need only reflect the general subject matter of discussions * * * ." When one considers the sensitive nature of the topics examined in executive sessions, it follows from this language that it is *only* the minutes of an executive session which may be properly limited to "the general subject matter of discussions." The minutes of *any other meeting* of a public body must contain a more substantial treatment of the items discussed, and certainly should not be limited to a mere recounting of the body's roll call votes.

**{¶ 26}** The appellees also argue that mandamus relief is inappropriate in this matter because White has failed to satisfy the requirements for the issuance of a writ of mandamus. For a writ of mandamus to issue, there must be (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to perform the requested act, and (3) no plain and adequate remedy at law. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St. 3d 1, 3, 591 N.E.2d 1186, 1188. The appellees argue that because R.C. 121.22 does not explicitly mention the sort of information that should be included in the board's minutes, and because R.C. 305.10 does not enumerate the same sort of information sought by White, neither the board nor its clerk had a clear legal duty to provide more copious minutes. Consequently, the appellees argue, White does not have a clear legal right to such minutes.

**{¶ 27}** This argument is not persuasive. As we have already noted, the "full record" required under R.C. 305.10 is not limited to the specific information enumerated under that section. Rather, compliance with R.C. 305.10 also requires the clerk of a board of county commissioners to observe R.C. 121.22. The result

of these two statutes being read together results in White's clear legal right to the information she seeks, and the appellees' clear legal duty to provide that information.

{¶ 28} We recognize that it is not the business of this court to micro-manage the public record-keeping procedures of local governments; public bodies should be trusted with a certain degree of latitude in the preparation of minutes and other records of their proceedings. Accordingly, we resist the temptation to prescribe any particular means of satisfying R.C. 121.22 and 305.10. Audio- or videotape recordings, word-for-word transcripts, even abstracts of the discussions indicating the identity of the speakers and the chronology and substance of their statements, are all legitimate means of satisfying the requirements of R.C. 121.22 and 305.10. Accordingly, we refrain from laying down specific guidelines, other than the dictate that for public records maintained under R.C. 121.22 and 305.10, full and accurate minutes must contain sufficient facts and information to permit the public to understand and appreciate the rationale behind the relevant public body's decision. In light of this holding, the mandamus relief ordered by the trial court in this matter, a preparation of minutes of the Board's meetings, was proper.

{¶ 29} Finally, we address the issue of the trial court's award of attorney fees. Former R.C. 121.22(I)(2) provided for an award of "all court costs and reasonable attorney's fees." (144 Ohio laws, Part II, 1858.) Similarly, R.C. 149.43(C) states that a person aggrieved by a failure to observe R.C. 149.43 may commence a mandamus action and receive reasonable attorney fees for the successful prosecution of such an action. The court of appeals improperly reversed the trial judge's decision to award attorney fees after it mistakenly concluded that R.C. 121.22 and 149.43 were not implicated in this action. Since we have determined that White's action did rely on R.C. 121.22 and 149.43, we award attorney fees and order the appellant to submit evidence in accordance with S.Ct.Prac.R. XIV(4) to support her request for fees and costs.

{¶ 30} Based on the foregoing, the judgment of the court of appeals is reversed.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 31} I dissent only from the majority's holding that an award of attorney fees is proper in this case.

_____