**LAPEER COUNTY, MICHIGAN,**
a municipal corporation,
**Plaintiff–Appellee,**

v.

**MONTGOMERY COUNTY, OHIO,** a municipal corporation; **Montgomery County Sheriff's Department, Defendants–Appellants.**

No. 96–1093.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1996.

Decided Feb. 24, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied May 9, 1997.*

* Judge Merritt would grant rehearing for the reasons stated in his dissent.

Marcia L. Howe (argued), Daniel P. Dalton (briefed), Johnson, Rosati, Galica, Shifman, LaBarge, Aseltyne, Sugameli & Field, Christopher J. Johnson (briefed), Farmington Hills, MI, for Plaintiff-Appellee.

Elissa D. Cohen (argued and briefed), Office of the Prosecuting Attorney for the County of Montgomery, Dayton, OH, for Defendants-Appellants.

Before: MERRITT, KENNEDY, and GUY, Circuit Judges.

GUY, J., delivered the opinion of the court, in which KENNEDY, J., joined. MERRITT, J. (pp. 79–80), delivered a separate dissenting opinion.

RALPH B. GUY, Jr., Circuit Judge.

In this suit to recover extradition expenses, defendants Montgomery County, Ohio, and Montgomery County, Ohio, Sheriff's Department (hereinafter referred to collectively as defendant or Montgomery County), appeal from a summary judgment entered in favor of the plaintiff, Lapeer County, Michigan. Our review of the record convinces us that summary judgment was properly granted and we affirm.

## I.

On September 18, 1992, the Montgomery County Sheriff's Department issued an all-points-bulletin for Michael David Hild. The bulletin indicated that Hild had an extensive criminal history, was presumed to be armed and dangerous, and was wanted in connection with a number of burglaries that had occurred in Montgomery County. It also indicated Hild was wanted in Florida and Kentucky for similar offenses and advised officers to use caution in arresting him.

Hild's former wife, Carol Hild, lived in Lapeer County, Michigan. On November 10, 1992, at approximately 10:30 p.m., Carol Hild called the Lapeer County Sheriff's Department to inform them that Hild was hiding in her apartment. The department ran a check on Hild and found he was wanted in Montgomery County, Ohio.

The Lapeer County Sheriff's Department then contacted the Michigan State Police for assistance in apprehending Hild. The law enforcement agencies met at the department to coordinate a strategy. They then proceeded to Carol Hild's apartment.

When the officers arrived, they spotted Hild outside the apartment. Hild tried to flee from the officers, and during pursuit he was shot in the leg. Hild was arrested and taken to the hospital for treatment. His leg was eventually amputated.

Following Hild's apprehension, the Lapeer County Sheriff's Department contacted the

Montgomery County Sheriff's Department to confirm the warrants. After verifying Hild's identity based on tattoos, the Montgomery County Sheriff's Department requested Lapeer County to detain Hild for "pickup."

On November 23, 1992, Hild was arraigned in Lapeer County on the information from Montgomery County. Two days later he waived extradition and was transported by ambulance to the Ohio border where he was picked up by the Montgomery County Sheriff's Department.

Lapeer County subsequently contacted Montgomery County regarding expenses incurred in apprehending Hild. Montgomery County did not reply.

Lapeer County then brought this action against Montgomery County and the State of Ohio, alleging that defendant's failure to reimburse Lapeer County violated the Federal Extradition Act, see 18 U.S.C. § 3195, and the Uniform Criminal Extradition Act, see Ohio Rev.Code Ann. § 2963.01–.35 (Anderson 1996).

The State of Ohio filed a motion to dismiss, and Lapeer County filed a motion for summary judgment. Following a hearing on these motions, when it was learned no governor's warrant had been issued by Ohio for Hild, the court denied Lapeer County's motion and issued an order to show cause why summary judgment should not be granted in favor of Montgomery County. The court declined to issue an order at that time regarding the State of Ohio's motion.

In response to the show cause order, plaintiff argued that no governor's warrant was needed in light of § 307.50 of the Ohio Revised Code, which authorizes reimbursement of expenses even when extradition has been waived. On this basis, moreover, plaintiff argued it was entitled to summary judgment. Defendant Montgomery County did not respond.

The court, reviewing plaintiff's arguments, issued an order granting summary judgment in favor of Lapeer County against Montgomery County. In the same order it granted the State of Ohio's motion and dismissed it from the case.

Defendant Montgomery County then changed attorneys and moved for reconsideration. The court denied the motion and entered judgment for plaintiff in the amount of $112,076.37 plus interest. Defendant filed a timely appeal.

## II.

On appeal, defendant argues (1) Ohio Rev. Code Ann. § 307.50 (Anderson 1992) does not create a cause of action under which recovery for expenses may be sought; and (2) even assuming that statute were to apply, genuine issues of material fact remain as to whether the requirements for reimbursement under the statute have been met, including whether the expenses were incurred for extradition purposes; did the prosecuting attorney have notice of waiver of extradition; and were the expenses incurred "necessary." Defendant also alleges the court improperly failed to join the Michigan State Police officers who shot Hild.

### A. Applicability of § 307.50

■ We first consider whether § 307.50 applies. That provision provides as follows:

When any person charged with a felony has fled to any other state, territory, or country, and the governor has issued a requisition for such person or requested the president of the United States to issue extradition papers, or the prosecuting attorney of any county in the state seeking the return of a felon has received notice of waiver of extradition, the board of county commissioners may pay, from the country treasury to the agent designated in such requisition, request to the president, or order by the prosecuting attorney seeking return, all necessary expenses of pursuing and returning the person so charged, or so much of such expenses as seem just.

Ohio Rev.Code Ann. § 307.50 (Anderson 1992).

Defendant contends that based on the language "the board of county commissioners may pay," the provision is discretionary. There appears to be no case law interpreting § 307.50. The Ohio Supreme Court, however, in a series of decisions dating back to 1837, has made clear that in instances of

statutory construction the word "may" "is to be construed as 'shall,' where a matter of public interest is involved." *Pennsylvania R.R. Co. v. Porterfield,* 25 Ohio St.2d 223, 267 N.E.2d 792, 794 (1971). In addition, the Ohio attorney general, in considering § 307.50, expressly relied on *Porterfield* in construing the language "may" as mandatory. Op. Att'y Gen. 72–105. In light of these authorities, we conclude that § 307.50 does apply.[1]

## B. Whether Provisions of § 307.50 Have Been Satisfied

Defendant next contends that even assuming § 307.50 applies, plaintiff has failed to establish for summary judgment purposes that it is entitled to prevail as a matter of law. Defendant alleges three errors, which we address in turn.

### 1. Whether the Expenses Were Incurred for Extradition Purposes

■ Section 307.50 authorizes payment for expenses incurred "pursuing and returning the [fugitive]." Defendant argues the expenses were incurred not in pursuing Hild as a fugitive but, rather, in responding to a domestic violence incident. The record shows that in subsequent conversations with the police as Hild was being apprehended, his former wife expressed fear of Hild and the desire that he be captured.

These facts are not controlling. It is clear that Hild was being pursued as a "Wanted Person." According to police records, the incident report lists under nature of the incident "Wanted Person." The description of Carol Hild's initiating call into the police reporting Michael Hild's presence at her house is listed as "Wanted Person." The record further shows under offense codes "Attempt to Locate." We conclude therefore that no error has been shown.

### 2. Whether the Prosecutor had Notice of Waiver of Extradition

■ Defendant next argues that a genuine issue of material fact remains as to whether the prosecutor had notice of waiver

of extradition under § 307.50. That provision requires payment "when . . . the prosecuting attorney of any county in the state seeking the return of a felon has received notice of waiver of extradition." In this case, Hild waived extradition on the same day he was turned over to Ohio authorities. There is nothing in the record that indicates actual notice of the waiver was given directly to the prosecuting attorney of Montgomery County. Notice need not be actual, however, but may include constructive notice. *See, e.g., Wedra v. Thomas,* 671 F.2d 713, 717 n. 1 (2d Cir. 1982) (knowledge is properly attributable to the prosecutor's office given the officers were acting as an arm of the prosecution). The record reflects that as early as July 1992, Sandra Hobson, assistant Montgomery County prosecutor approved charges against Hild in addition to the current warrants on file for him "with a Nationwide Extradition radius." The prosecuting attorney's office was also mentioned in Lapeer County Sheriff's Department records reflecting the following communication from the Montgomery County Sheriff's Department:

> [T]hey will come and get [Hild] when he waives, if problems, call their Pros[ecutor's]. Office 513–225–5757 and talk to assistant that handles extraditions.

Under these circumstances, we conclude that the prosecutor had at least constructive notice of Hild's waiver.

### 3. Whether the Expenses Were Necessary Expenses

■ Defendant further claims that plaintiff failed to establish entitlement to expenses in the amount awarded. Section 307.50 provides for payment of "all necessary expenses of pursuing and returning the person so charged, or so much of such expenses as seems just." In this case, plaintiff submitted, supported by affidavit, the expenses it incurred in providing medical treatment and other related services to Hild. Defendant first argues, without supporting authority, that as a matter of law the phrase "necessary expenses" is limited only to travel costs asso-

---

1. Defendant also claims the district court erred in holding that plaintiff's action also lay under § 2335.10 of the Ohio Revised Code. Ohio Rev. Code Ann. § 2335.10 (Anderson 1995). We need not decide this matter, however, as we conclude § 307.50 applies.

ciated with transporting a felon back from the foreign state. In construing a statute, absent a definition otherwise, we apply the plain meaning of the language. *E.g., White v. Clinton County Bd. of Comm'rs*, 76 Ohio St.3d 416, 667 N.E.2d 1223, 1228 (1996). While travel costs would certainly be reasonably construed to be included among necessary expenses, there is nothing limiting that term to travel expenses. In addition, the language's reference to "expenses ·of pursuing" a fugitive suggests that more than transportation costs would be included. We also note that similar language under the Federal Extradition Act, 18 U.S.C. § 3181, *et seq.*, referring to "costs or expenses incurred in any extradition proceeding in apprehending, securing, and transmitting a fugitive shall be paid by the demanding authority," *id.* § 3195, has been interpreted to include medical expenses incurred while holding a fugitive for extradition. *See County of Monroe v. State of Florida*, 678 F.2d 1124, 1126 (2d Cir.1982) (characterizing medical expenses and guard services incurred during extended hospitalization of fugitive as "expenses of apprehending, securing and delivering up the fugitive").[2]

■ The use of the terms "necessary" and "so much . . . as seems just" as appear in § 307.50 do impose an element of reasonableness as to the expenses incurred. In that regard, defendant claims that "a reasonable jury could have arrived at a different award amount. . . ." As the Supreme Court explained in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2510 (emphasis in original). A fact is "material" when it is capable of affecting the outcome of the suit· under governing law; a dispute about a "material fact" is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The Court concluded that this standard was equivalent to that governing a directed verdict under FED.R.CIV.P. 50(a). *Id.* at 250, 106 S.Ct. at 2511. As a result, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted). Under this standard, the question for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

■ In light of the fact defendant offered no challenge to the reasonableness of plaintiff's expenses at the summary judgment proceeding, we conclude the district court correctly resolved the issue of reasonableness.

## C. Propriety of Failure to Join Michigan State Police

■ Defendants also raised in their brief the argument that the district court erred in refusing to join the Michigan State Police officers who shot Hild as he attempted to flee. Defendants contend that the officers' joinder is required for "proper subrogation in this case . . . so that the financial responsibility in this case [may] be assigned to the proper parties." Defendants further contend, citing *Wilson v. Beebe*, 770 F.2d 578, 587–88 (6th Cir.1985), that "Michigan would be required to indemnify the wrongdoing troopers sued in their individual capacities."

Rule 19 of the Federal Rules of Civil Procedure governs compulsory joinder. In this case, we consider whether "complete relief cannot be accorded among those already parties" without the presence of the officers. FED.R.CIV.P. 19(a). Lapeer County was obligated to pay Hild's medical expenses under Michigan law, which requires a county to pay the medical expenses incurred by all prisoners and persons charged with an offense. MICH. COMP. LAWS ANN. § 801.4 (West 1982 & Supp.1996).[3] Although Michigan law allows

---

2. The court remanded for a determination on the merits of the expenses sought.

3. The language "charged ·with an offense" has been interpreted broadly to allow for medical expenses attendant from the moment of arrest. *See University Emergency Servs., P.C. v. City of*

Lapeer County to seek reimbursement from prisoners for their medical care, *id.* § 801.5a(1) (West 1982), the law does not require the county to do so. That provision provides in pertinent part as follows:

> The county board of commissioners may seek reimbursement for expenses incurred in providing medical care and treatment.... If a county board of commissioners seeks reimbursement pursuant to this section, reimbursement shall be sought only in the following order:
>
> (a) From the prisoner or person charged.
>
> (b) From insurance companies ... or other source for those expenses.

*Id.* Hild is not a party in this case. Nor do defendants seek to join him. As the district court noted, moreover, defendants did file a third-party claim against the officers in an action brought by Hild against defendants for alleged improper medical care. *See EEOC v. Brown & Root, Inc.,* 688 F.2d 338 (5th Cir.1982) (movant failed to demonstrate adverse effect of failure to join party). In contrast, this matter involves Lapeer County's effort to be reimbursed for expenses incurred in pursuing and returning Hild as a fugitive. *See* Ohio Rev.Code § 307.50. Under these circumstances, we conclude there is nothing in that cause of action that requires the presence of state police. Therefore, the district court did not err in failing to join the officers.

**AFFIRMED.[4]**

MERRITT, Circuit Judge, dissenting.

I do not agree that Ohio Rev.Code Ann. § 307.50 applies to this action. The majority has used a simple statute authorizing counties in the State to pay for the return of a fugitive to impose strict liability without any reasonable boundaries.

*Detroit,* 141 Mich.App. 512, 367 N.W.2d 344, 347–48 (1984).

4. We disagree with the dissent's construction of the holding in this case. To begin with, strict liability is a tort concept and we are not dealing with a tort recovery here. Second, the liability is not *based* on the Ohio statute. The Ohio statute amounts to a legislative recognition of the interplay between states when extradition is involved, insofar as the incurrence of costs is concerned.

The section of Ohio law that the majority applies to this action provides:

> When any person charged with a felony has fled to any other state, territory, or country, and the governor has issued a requisition for such person or requested the president of the United States to issue extradition papers, or the prosecuting attorney of any county in the state seeking the return of a felon has received notice of waiver of extradition, *the board of county commissioners may pay,* from the county treasury to the agent designated in such requisition, request to the president, or order by the prosecuting attorney seeking return, all necessary expenses of pursuing and returning the person so charged, or *so much of such expenses as seem just.*

Ohio Rev.Code Ann. § 307.50 (Anderson 1992) (emphasis added).

Section 307.50 merely authorizes the board of county commissioners to pay necessary expenses, or so much as seem just, for the pursuit and return of a fugitive. The statute does not require the board to make such payments. If the legislature had intended to mandate payment in all cases, it would have said so, and it would not have given the county discretion to pay only "such expenses as seem just" to the county commissioners. The statute does not use words such as "must" pay or "shall" pay. Instead, the statute specifically states that the board "*may* pay ... expenses." Under Ohio law, the word "may" is generally "construed to make the provision in which it is contained optional, permissive, or discretionary." *Dorrian v. Scioto Conservancy Dist.,* 27 Ohio St.2d 102, 107, 271 N.E.2d 834 (1971). The word "may" is given a stronger interpretation only if the intent of the legislature clearly appears. *Id.* at 108, 271 N.E.2d 834. No such intent is exhibited in section 307.50. Nor does the

It also makes it clear that a local unit of government paying extradition costs would not be acting beyond its powers and committing an ultra vires act. Finally, the defendant had an opportunity to raise all of the questions that the dissent feels are still unresolved, and either elected not to do so or had the issues resolved against it on the basis of there being no material facts in dispute.

majority point to any such intent. This statute does not impose any liability on any Ohio authority to pay for the pursuit or return of a fugitive. Therefore, the statute should not be applied to this action. The effect of the Court's holding is to create an Ohio statutory tort or right of restitution from § 307.50 that automatically results in liability for extradition expenses suffered by other states and their local governments. The Court imposes liability for the full amount claimed without requiring any investigation of the reasonableness of more than $100,000 in expenses. The Court cites no Ohio or other authority for the imposition of this judgment except § 307.50. If the liability is not based on the statute, what legal theory is it based on? The Court offers no other basis for its decision than the statute or simple judicial fiat.

In addition, the majority ignores the reasonable limitations specified in the statute. Section 307.50 grants the board discretion to limit the payment of necessary expenses to "so much of such expenses as seem just." The majority disregards this limitation by accepting, without question, the huge bill sent by Lapeer County to Montgomery County.