DECISION AND JUDGMENT ENTRY
{¶ 1} J.J. Detweiler Enterprises, Inc. ("Detweiler") appeals the decision of the Washington County Court of Common Pleas dismissing with prejudice its complaint for declaratory judgment and entering judgment in favor of all defendants. Detweiler argues that the trial court erred in holding that the vacation of Decatur Township Road 254 ("T.R. 254") was proper and in accordance with law. We find that the Washington County Board of Commissioners ("Board") had the authority to initiate the closing of T.R. 254 of its own initiative, and in the absence of affirmative evidence to the contrary, the trial court could presume that the Board acted in accordance with its statutory powers. Therefore, we find that the procedural errors raised by Detweiler are insufficient to declare the Board's action void ab initio.
 {¶ 2} Additionally, we find that, the vacation of T.R. 254 did not extinguish any private right of access that Detweiler's predecessor in interest may have had at that time. However, because the record contains some competent, credible evidence of Fox's exclusive, open, notorious, and adverse possession of the road, coupled with evidence of the inaction of Detweiler's predecessor in interest for a continuous period in excess of 21 years, we find that the trial court did not err in finding that any such private right of access was terminated by adverse possession. Accordingly, we affirm the decision of the trial court.
 I. {¶ 3} In September of 1975, Appellee Wilbert F. Owens, Jr. ("Owens") and other nearby landowners signed and filed a public road petition, alleging that a section of T.R. 254 had not been open for over 30 years, and requesting that the Board vacate the portion of T.R. 254 "[b]eginning at Rt 11 and ending at the drive of W.F. Owens". Another public road petition, unsigned by any person, was filed with the Board the same day, and may have been stapled to the signed petition. The second, unsigned petition requested the vacation of the road "[b]eginning at point in the Athens-Washington County Line and in the center of Township Road No. 254 an (sic) through the lands of George W. Herren Jr. and Gloria Herren, Hazel F. Redding and Wilbert F. Owens and Pauline Owens a distance of 1800 feet more or less to the south side of a private drive to the Wilbert F. and Pauline Owens residence and there to end. Situated in the Southwest one quarter of Section 25, Town 6, Range 11, Decatur Township, Washington County, Ohio."
 {¶ 4} On September 23, 1975, the Board adopted a resolution fixing the time and place for the view and final hearing. The Board published the notice of time and place of view and of final hearing in the Marietta Times as required by R.C. 5553.05(A). However, the Board's records do not reflect whether it sent written notice of the hearing, by first class mail, to the owners of property abutting upon the affected portion of T.R. 254 as required by R.C. 5553.05(B).
 {¶ 5} On October 28, 1975, the Board adopted a resolution vacating the section of T.R. 254 described in the second, unsigned petition.
 {¶ 6} The individual parties to this action all own real property in Decatur Township, Washington County, Ohio. All of these properties abut T.R. 254, which runs essentially from north to south through the properties. Owens lived on his property all of his life, and acquired it from his father before the Board vacated T.R. 254. The Foxes acquired their property in either 1978 or 1979. Mr. Fox testified that in 1980 or 1981, he erected a fence blocking the entrance to the northern end of the vacated T.R. 254. Additionally, Mr. Fox testified that he erected another fence blocking the southern access to the road right at the property line between his property and the Detweiler property sometime in 1988 or 1989.
 {¶ 7} Detweiler acquired its parcel, consisting of approximately 70 acres, from George and Gloria Herren in February 2001. Before consummating the purchase, Detweiler learned that the property might be landlocked due to the vacation of T.R. 254 and the pending vacation of T.R. 423 in Athens County. Despite this knowledge, Detweiler elected to proceed with the purchase, and acquired it at a substantially reduced price due to the potential access problems. Detweiler's deed states plainly, in bold face type "[t]he above described parcel appears to be land-locked due to the vacation of a portion of Decatur Township Road #254 on October 25, 1975 by the Washington County Commissioners."
 {¶ 8} After acquiring the subject property, Detweiler filed a complaint for declaratory judgment against the Board, Gregory and Rebecca Fox ("Fox"), and Owens. In its complaint, Detweiler alleged procedural defects in the vacation of T.R. 254, and consequently sought to vacate the Board's October 1975 resolution vacating T.R. 254, restore T.R. 254 to an active township road, and determine its rights to access its property through the Fox and Owens properties.
 {¶ 9} After a one-day trial, the lower court rendered a decision, wherein, it determined that "[t]here is no evidence in this case that the Washington County Commission gave written notice to the Plaintiff's predecessors in title or to the other adjoining property owners. They did give public notice by publication in a local newspaper." The trial court further found that, but for the failure to provide notice, the Board's actions were proper and in accordance with R.C. 5553. The trial court determined that the failure to provide notice was not fatal to the vacation because R.C. 5553.05(B) provides that "failure of the delivery of such notice does not invalidate any such vacating of the road authorized in the resolution."
 {¶ 10} Ultimately, the trial court concluded that: (1) the Board properly vacated T.R. 254; (2) the court lacked jurisdiction to consider an appeal from the final order or judgment of the Board vacating any road because Detweiler's or their predecessors in interest did not perfect their appeal pursuant to R.C. 5563.02; and, (3) any private right of way that Detweiler's or their predecessors in interest may have had was extinguished through adverse possession.
 {¶ 11} Detweiler appeals, presenting the following assignments of error: (1) the trial court erred in holding that the vacation of T.R. 254 was proper and in accordance with law; and, (2) the trial court erred in holding that appellant did not have a private right-of-way to its property in spite of the validity of the proceedings to vacate T.R. 254.
 II. {¶ 12} As a preliminary matter, we note that Appellees Fox and Owens argue that because Detweiler has failed to challenge the trial court's finding that it did not have jurisdiction, Detweiler has waived any error regarding the alleged lack of jurisdiction. Appellees Fox and Owens are correct in their assertion that the Ohio Supreme Court has ruled R.C. 5563.02 is the exclusive means for appealing a decision of a board of county commissioners to vacate a road. See State, ex rel.Lindenschmidt v. Bd. of Commrs. (1995), 72 Ohio St.3d 464. However, inLindenschmidt, the Supreme Court specifically noted, "Lindenschmidt did not allege that there was no notice given of the final hearing, and he had constructive notice from the applicable statutory provisions that a final adverse decision by the board might be rendered at that hearing which would require the immediate filing of a notice of intention to appeal. There is no indication of any violation of due process." Id. at 468. Notably, Lindenschmidt was the person who filed the petition requesting the vacation of a county road, and he had notice that the hearing was to take place.
 {¶ 13} Here, Detweiler specifically alleges jurisdictional and notice defects, which, if substantiated, would render the Board's action null and void. The trial court held that it lacked jurisdiction to consider an appeal from the final order or judgment of the Board vacating T.R. 254 because Detweiler and/or its predecessor in interest did not comply with the appellate procedure delineated in R.C. 5563.02. However, we note that the trial court did engage in an analysis of Detweiler's claim of procedural defects in the Board's proceedings. Before finding that it lacked jurisdiction to consider an appeal, the trial court specifically held that the Board's actions were proper and in accordance with R.C. 5553.
 {¶ 14} Thus, while the trial court recognized that it lacked jurisdiction to consider a direct appeal of the Board's actions, it also recognized that if the Board failed to comply with the statutory grant of authority, its actions would be void ab initio, and, therefore, subject to judicial review. Because we find that courts have the inherent power to attack orders that are void ab initio, we reject the argument of Appelees Fox and Owens that the court lacks jurisdiction to review the action of the Board to ensure its compliance with its statutory grant of authority. See Lincoln Tavern, Inc. v. Snader (1956), 165 Ohio St. 61, paragraph one of the syllabus.
 III. {¶ 15} R.C. 2506.04 establishes the standard of review for a trial court reviewing an administrative order. It provides that: "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided by the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code."
 {¶ 16} Our review is more limited in scope, and requires us to affirm the trial court's decision, unless we find, as a matter of law, that it is not supported by a preponderance of reliable, probative and substantial evidence. Buck v. Bd. of Cty. Commrs. (October 29, 1998), Washington App. No. 98CA14, citing Smith v. Granville Twp. Bd. ofTrustees (1998) 81 Ohio St.3d 608, 612.
 {¶ 17} In its first assignment of error, Detweiler asserts that the trial court erred in holding that the vacation of T.R. 254 was proper and in accordance with law. The essence of Detweiler's argument is that the procedure followed by the Board was defective in that: 1) the petition requesting the vacation of T.R. 254 was defective; and, 2) the Board failed to give notice to abutting landowners as required by R.C.5553.05(B). Detweiler argues that the Board did not follow the statutory prerequisites for exercising its power to vacate, and as such, the Board's vacation of T.R. 254 is void ab initio.
 {¶ 18} The Ohio Supreme Court has long recognized that "[t]he action of a public officer, or of a board, within the limits of the jurisdiction conferred upon it by law, is not only presumed to be valid but it is also presumed to be in good faith and in the exercise of sound judgment." Wheeling Steel Corp. v. Evatt (1944), 143 Ohio St. 71, quotingState ex rel. Maxwell v. Schneider (1921), 103 Ohio St. 492, 498. A person seeking to overcome this presumption must produce clear and convincing evidence of the invalidity claimed. Stokcer v. Wood (1969),18 Ohio App.2d 34, 36. Clear and convincing evidence is evidence that creates a firm belief as to the facts sought to be established. In reRodgers (2000), 138 Ohio App.3d 510, 519, citing Cross v. Ledford (1954),161 Ohio St. 469.
 {¶ 19} It is well settled that the proceedings of a board of commissioners are those of a court of special jurisdiction. Anderson v.Hamilton County Commrs. (1861), 12 Ohio St. 635, 644. As such, the Board may only exercise the powers specifically conferred upon it by statute, and we must construe those powers strictly. See State ex rel. Treadwellv. Commrs. of Hancock Cty. (1860), 11 Ohio St. 183; and Delaware Cty.Commrs. v. Andrews (1868), 18 Ohio St. 49, 50.
 {¶ 20} Here, the Board derives its power to vacate township roads from R.C. 5553.04, which provides in relevant part: "When the board of county commissioners is of the opinion that it will be for the public convenience or welfare to * * * vacate * * * a public road, it shall so declare by resolution, which resolution shall set forth the general route and termini of the road, or part thereof, to be * * * vacated * * * . When a petition, signed by at least twelve freeholders of the county residing in the vicinity of the proposed improvement * * * is presented to the board requesting the board to * * * vacate * * * a public road, such board shall view the location of the proposed improvement, and, if it is the opinion that it will be for the public convenience or welfare to make such improvement, it may proceed to make such improvement as provided in sections 5553.04 to 5553.16, inclusive, of the Revised Code. Such petition shall set forth the general route and termini of the road, or part thereof, to be * * * vacated * * * ." The issue presented here is whether the petition and notice requirements of R.C. 5553.04 et seq. are conditions precedent to the exercise of the Board's power to vacate a county road, such that in their absence, the Board's actions are void ab initio.
 {¶ 21} In 1975, Owens and 11 other freeholders signed a petition requesting the Board to vacate the portion of T.R. 254 "[b]eginning at Rt 11 and ending at the drive of W.F. Owens." At the time that petition was filed with the clerk, another petition, bearing a different description of the road to be vacated, and unsigned by any person, was also filed. Allegedly in response to the filing of the petition, and in accordance with R.C. 5553.04 and 5553.05, the Board adopted a resolution fixing the time and place of the view and final hearing. In that resolution, the Board stated: "WHEREAS, A Petition signed by at least twelve freeholders of the County residing in the vicinity of the proposed improvement has been presented to this Board of County Commissioners requesting said Board to Vacate a part of a Public Road as described therein * * * ." (Emphasis added).
 {¶ 22} However, when the Board published notice of the view and final hearing in the Marietta Times, as required by R.C. 5553.05(A), and when it adopted the final resolution vacating T.R. 254, the description of the road to be vacated was the description found in the unsigned
petition.
 {¶ 23} The current Board clerk testified that when she retrieved the Board's file regarding the vacation of T.R. 254, the signed and unsigned petitions were stapled together, implying that they were, essentially filed as one document. However, the fact that the documents were stapled together in 2000 or 2001 does not tell us whether they were stapled together in 1975 when the twelve freeholders reviewed and signed it. Thus, the petition could be defective for a lack of signatures assenting to the description of the road actually vacated by the Board.
 {¶ 24} Although the petition may have been defective, we find that R.C. 5553.04 et seq. specifically authorizes the Board to vacate roads, either on petition or on its own initiative. See, State ex rel. StrategicCapital Investors, Ltd. v. McCarthy (1998), 126 Ohio App.3d 237, 245. Here, the petition may have brought the need for the vacation to the Board's attention, but the Board had the authority to act without the filing of any petition. The fact that the Board purported to rely upon the petition in the exercise of its power will not invalidate its action. The Ohio Supreme Court has previously held that "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof." Joyce v. Gen.Motors Corp. (1990), 49 Ohio St.3d 93, 96.
 {¶ 25} Similarly, the Supreme Court has noted that "[w]hen an instrument is susceptible of two conflicting probable constructions, the court will adopt the construction which is most consistent with good faith, and will hold that such construction was intended by the parties; and this rule of construction applies to cases where an act or fact is fairly susceptible of two interpretations, one lawful and the other unlawful." Lima v. McBride (1878), 34 Ohio St. 338, 349, citation omitted. Because we find the board could lawfully vacate the road of its own initiative, its claimed reliance upon the irregular petition will not invalidate the vacation proceeding.
 {¶ 26} In addition to the allegedly defective petition, Detweiler also claims that the Board's actions were void for failure to provide abutting landowners with the notice required by R.C. 5553.05(B). Detweiler's argument relies upon: 1) its requests for admissions, served upon the Board, which, it claims, are deemed admitted because the Board failed to respond to same; and, 2) the lack of proof in the Board's records that it did, indeed, send the required notices.
 {¶ 27} We have previously ruled that the notice provisions of R.C. 5553.05 are mandatory, and that non-compliance with those provisions invalidates the vacation proceedings. Rosenzweig v. Bd. of Cty. Commrs.
(Oct. 25, 1995), Jackson App. No. 94CA741. The fact that the statute provides "failure of delivery of the notice" (emphasis added) will not invalidate the vacation proceedings does not obviate the requirement that the Board send the required notice. To hold otherwise would be to ignore the statutory mandate that the notice shall be sent. Thus, the Board's compliance with the notice requirements of R.C. 5553.05 is relevant to determine whether it had jurisdiction to vacate T.R. 254.
 {¶ 28} Detweiler's claim that the Board admitted it did not send the requisite notices is without merit. Detweiler's request for admission number three states: "No notices of the vacation were sent by the county commissioners by certified mail to the Plaintiff or to the Plaintiff's predecessors in title, George W. Herren, Jr. and Gloria Herren, or to any other adjoining landowners." (Emphasis added). This admission has absolutely no bearing upon the issue at hand, because the statute did not require the Board to send notice by certified mail. Rather, it required the Board to provide notice by first class mail.
 {¶ 29} The Board has not admitted its alleged failure to send the requisite notices by first class mail. Therefore, in order to overcome the strong presumption that the action of a public officer, or of a board, is valid, Detweiler must prove by clear and convincing evidence that the Board failed to send notice to the abutting landowners by first class mail.
 {¶ 30} The only evidence Detweiler presented that tends to prove the notices were not sent is the cross-examination of Jannell Hinton, the current clerk for the Board. Ms. Hinton testified that there was no indication in the Board file that any notices were sent to any landowners. Although Ms. Hinton could not testify as to the clerk's practices in 1975, she did testify that her current practice is to include a list of the property owners' names and addresses in the file with a note that the notices were sent.
 {¶ 31} While the clerk's current procedure is simple and logical, Detweiler has cited no statute, rule, or practice requiring the board to keep such a record at the time of the vacation proceedings. The Ohio Supreme Court has previously stated that "[i]n determining the sufficiency of the records of inferior tribunals and public boards to express their purposes, or to preserve a memorial of their transactions, respecting matters within their jurisdiction, technical precision should not be required. * * * [H]owever informal their records may be, if enough appears to show with reasonable certainty that the requirements of the law have been substantially complied with, their proceedings should, upon grounds of public policy, if for no other reason, be sustained." Lewisv. Laylin (1889), 46 Ohio St. 663, 666, citations omitted.
 {¶ 32} In McClelland v. Miller (1876), 28 Ohio St. 488, the Supreme Court addressed a failure of the board's records to reflect that all statutory steps were followed in opening a road. The Court noted "[i]t thus appears that the law provides for a bond being given, before the commissioners take action. But it does not provide that the road record must show that fact." Id. at 500. The Court ultimately held that: "[the] record, showing the action of the commissioners from day to day, might be expected to show that the bond in question was given, and still they might very properly refrain from causing it to appear in the record which provided only and specifically that the report, plat, and survey be recorded. In a collateral proceeding, therefore, like the one before us, it can not invalidate the record, that it does not exhibit a fact which the law has not required it to exhibit." Id. at 501.
 {¶ 33} Detweiler seeks to invalidate the Board's vacation of T.R. 254 based upon the Board's failure to maintain records demonstrating that it mailed notice of the vacation proceeding to abutting landowners. Yet, Detweiler cites no statute or rule that would require the Board to maintain such a record, nor do we find such a requirement.
 {¶ 34} While R.C. 305.10 charges the Board clerk with the duty to "keep a full record of the proceedings of the board," the statute does not specifically define the terms "full record" or "proceedings." The Ohio Supreme Court has offered some guidance, stating that "`full record' would be one in which the details of the recorded event are contained. `Proceedings' is defined as `an official record or account (as in a book of minutes) of things said or done (as at a meeting or convention of a society).'" White v. Clinton Cty. Bd. of Commrs. (1996), 76 Ohio St.3d 416,422, citations omitted. Thus, based upon the Supreme Court's interpretation and the remaining provisions of the statute, itself, the "full record" required by the statute is a full and accurate record of the Board's meetings and debate, not a detailed record of each ministerial act the Board may perform in the execution of its duties. We find no evidence of a statute or rule requiring the Board to keep detailed records of all of its correspondence. Therefore, the absence of such a record cannot prove that the Board failed to comply with its statutory duty to send notice to the abutting landowners in this case, particularly, when it appears from the record that the Board has substantially complied with the statutory requirements.
 {¶ 35} Detweiler argues that the facts of this case are very similar to the case of Hoyt v. Hull (1996), 111 Ohio App.3d 784, wherein the Seventh District Court of Appeals upheld the Carroll County Board of Commissioners' resolution rescinding a prior resolution "vacating" a county road. In that case, the court noted, "the board's records are devoid of any indication that the viewing and hearing took place. Likewise, there is nothing in the records to confirm any compliance with R.C. Chapter 5553. The trial court properly found that an order vacating a public road without proper compliance with the procedures prescribed by statute is invalid." Id. at 789-90.
 {¶ 36} It does not appear that anyone in Hoyt argued the actions of the Carroll County Board of Commissioners were presumed to be valid unless there was affirmative evidence to the contrary. Further, we note that Hoyt is readily distinguishable from the facts of this case. InHoyt, the Board of Commissioners, itself, recognized the existence of procedural defects and chose to rescind its prior resolution vacating the county road. Here, the Board has never acknowledged any defects in the prior proceedings and continues to stand behind its resolution vacating T.R. 254. Further, the record in Hoyt was devoid of any evidence regarding compliance with the hearing requirements of Chapter 5553 — records that the board is statutorily required to maintain.
 {¶ 37} Other than the negative inference from Ms. Hinton's testimony upon cross-examination, Detweiler offered absolutely no evidence tending to show that the board failed to send the notices required by R.C. 5553.05(B).
 {¶ 38} Based upon the foregoing, we find that Detweiler has failed to prove by clear and convincing evidence that the irregularities in the petition deprived the Board of jurisdiction, or that the Board failed to send the required notices to abutting landowners. In the absence of clear and convincing evidence to the contrary, we presume that the Board acted in accordance with the statutory requirements for the vacation of T.R. 254. Therefore, we find as a matter of law that the Board properly vacated T.R. 254. Accordingly, we overrule Detweiler's first assignment of error.
 IV. {¶ 39} In its second assignment of error, Detweiler argues that, even if the proceedings to vacate T.R. 254 were proper, it still possesses a private right-of-way as a result of its alleged reasonable necessity, and in accordance with the Ohio Supreme Court's holding inMcQuigg v. Cullins (1897), 56 Ohio St. 649. Detweiler further argues that if no easement is found, the County has effectively taken the property of its predecessor in title without compensation.
 {¶ 40} Fox and Owens argue that upon the vacation of T.R. 254, a private right of access arose in favor of Detweiler's predecessor in title. They further argue that said private right of access has terminated as a result of: 1) Fox's open, adverse, exclusive and notorious possession of the property for a period in excess of 21 years; 2) abandonment of the private right of access by the Herrrens, Detweiler's predecessor in interest; 3) estoppel; and/or 4) laches.
 {¶ 41} Because the claims asserted by the parties with regard to the existence or non-existence of a private right of way depend upon the specific facts in this case, we must review the decision of the trial court to determine whether it is against the manifest weight of the evidence. We will not overturn the judgment of a trial court as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment. See C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. Factual findings of the trial court are to be given great deference on review because the trial court is in a better position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80; see, also, Myers v. Garson
(1993), 66 Ohio St.3d 610, 615.
 {¶ 42} Here, the trial court found that: 1) the road has not been used since some time prior to 1946; 2) it has been gated since 1980 or 1981; 3) the Foxes have openly, hostilely, and notoriously prevented access over this road for a continuous period in excess of 21 years; and, 4) Detweiler and it's predecessor in title have not used the road in any fashion since prior to 1946. The court concluded that Detweiler's predecessors in title had abandoned any private right of access that may have arisen upon the vacation of T.R. 254. Further, the trial court held that Fox and Owens had extinguished any such right by adverse possession.
 {¶ 43} Detweiler is correct in its assertion that upon vacation of a public road, an individual landowner may retain a private right of access as a result of reasonable necessity. In McQuigg, the Ohio Supreme Court addressed a similar situation, wherein the township trustees vacated a public road. Cullins, an abutting landowner, appeared at the hearing and entered no objection. Subsequently, Cullins, who had used the road to access his property for over 30 years, sought an injunction to prevent the trustees from closing the road. The Supreme Court held that "[t]he effect of the judgment of the trustees ordering the road vacated, is to relieve the public from any duty to keep it in repair, but it does not authorize the trustees, or anybody else, to close the road up, or obstruct it, and thus deprive Cullins of the right to travel it."McQuigg, 56 Ohio St. at 654. The Court concluded that Cullins retained this private right of access despite the fact that another, less convenient, route was available to Cullins.
 {¶ 44} Here, Detweiler's predecessors in title may have retained a private right of access to travel upon the vacated portion of T.R. 254, if they had a reasonable need for such access. See, Paul v. WissalohicanCamp Co. (1957), 104 Ohio App. 253, 257; Butzer v. Johns (1979),67 Ohio App.2d 41, paragraph three of the syllabus; Lord v. Wilson (Apr. 10, 1985), Medina App. No. 1354. However, any such right that Detweiler's predecessors in interest may have retained was not absolute and indefeasible.
 {¶ 45} In Herrell v. Runyon (Dec. 27, 1999), Lawrence App. No. 99CA6, we held that the common law doctrine of adverse possession is applicable and may terminate an easement. Additionally, Ohio courts have long recognized that easements may be terminated by abandonment. SeeJunction RR. Co. v. Ruggles (1857), 7 Ohio St. 1, 10-11; Schenck v.Cleveland, Cincinnati, Chicago St. Louis Ry. Co. (1919),11 Ohio App. 164, 167; Warner v. Thompson (Sept. 27, 1993), Fayette App. No. CA93-02-002; Snyder v. Monroe Twp. Trustees (1996),110 Ohio App.3d 443, 457-58.
 {¶ 46} Here, Owens testified that he acquired his property from his father, having lived on the property from the time of his birth in 1946. He further testified that in his lifetime, he had never seen anyone use the vacated portion of T.R. 254. Fox testified that he purchased his property in 1978 or 1979, and placed a gate blocking the upper entrance to the road in 1980 or 1981 with the intention of blocking all access to the vacated stretch of road. He further testified that a logging company approached him in 1988 or 1989 about gaining access to the Detweiler property via the vacated portion of T.R. 254, and that he denied the company's request.
 {¶ 47} Based upon the foregoing, we find that some competent, credible evidence supports the trial court's finding that any right of way that arose in favor of Detweiler's predecessors in interest was terminated by abandonment and adverse possession. We find it axiomatic that, in purchasing the subject property, Detweiler could not obtain any greater interest than its predecessor in title held. Any private right of way Detweiler's predecessor in interest may have acquired upon the vacation of T.R. 254 has terminated. Therefore, Detweiler is now precluded from claiming such a right of way through its perceived "reasonable necessity". Because the private right of access terminated as a result of the neglect and/or indifference of Detweiler's predecessor in title, we find there has been no governmental taking of private property without compensation. Accordingly, we overrule Detweiler's second assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Harsha, J. and Abele, J.: Concur in Judgment and Opinion.